IRWIN *et al.* v. LIFE & CASUALTY INSURANCE
COMPANY OF TENNESSEE INC.
THE ARLINGTON CORPORATION *et al.* v. LIFE &
CASUALTY INSURANCE COMPANY OF TENNESSEE INC.

Nos. 16402, 16403. November 17, 1948. Rehearing denied November 30, 1948.

*William G. Grant* and *Lokey & Bowden,* for plaintiffs in error. *Carl B. Copeland, Spalding, Sibley, Troutman & Kelley,* and *W. K. Meadow,* contra.

DUCKWORTH, Chief Justice. (After stating the foregoing facts.) Cases Nos. 16402 and 16403 are identical and will be decided together. The pleas and answers present only one main question, and that is whether or not equity will grant the relief prayed, which includes judgment for principal and interest and in addition thereto ten percent of the total debt as attorney's fees, after the petitioner has failed, due to negligence, to collect fire-insurance policies, which it held as collateral and which aggregate more than the amount of the debt and which became payable more than four months before there was any default in meeting payments on the main debt. If the exaction of attorney's fees would amount to an injury to the debtors as a result of the failure to collect and apply the insurance to the satisfaction of the debt, then so long as the petitioner seeks recovery of such attorney's fees it thereby denies equity to the defendants, and this constitutes a bar to the grant of any equitable relief prayed for in the petition. The duty of the creditor with respect to collecting this collateral is prescribed by the Code, § 12-605, which declares that "The pawnee is bound for ordinary care and diligence. If the property pledged be promissory notes or other evidences of debt, the pawnee must exercise ordinary diligence

in collecting and securing the same." This Code section has been many times construed by this court and held to impose upon the creditor the duty to exercise ordinary care and diligence, and for a failure to discharge this duty a creditor may be held liable for injuries sustained by the debtor as a result of the creditor's negligence. *Lee* v. *Baldwin,* 10 *Ga.* 208; *Colquitt* v. *Stultz,* 65 *Ga.* 305; *Fisher* v. *George S. Jones Co.,* 108 *Ga.* 490 (34 S. E. 172); *Mauck* v. *Atlanta Trust & Bkg. Co.,* 113 *Ga.* 242 (38 S. E. 845); *Wight* v. *Commercial Bank,* 115 *Ga.* 787 (42 S. E. 96); *General Supply Co.* v. *Toccoa Plumbing Co.,* 138 *Ga.* 219 (75 S. E. 135); *First National Bank of Blakely* v. *Hattaway,* 172 *Ga.* 731 (158 S. E. 565, 77 A. L. R. 375). But these decisions leave us in the dark as to precisely what will constitute loss or injury to the debtor sufficient to subject the creditor to liability. Obviously where collaterals are not collected and remain unimpaired and immediately available to the debtor upon satisfaction of his debt, the debtor is not as to such collaterals injured. It was upon this basis that most of the decisions just cited held that there was an absence of injury and consequently the debtor was not entitled to recover damages. It should be noted that the Code first imposes upon the creditor a duty to exercise ordinary care and diligence. It then provides that, if the pledged property be promissory notes or other evidences of debt, the creditor must exercise ordinary diligence to collect the same. In *First National Bank* v. *Hattaway,* supra, this court, while holding that the creditor there was not required under the Code section here under consideration to sell certain collaterals held as security for the main debt, yet it was there said, at page 735, that, "Where the creditor holds a promissory note given to him by his debtor and holds other promissory notes or other collateral for the principal obligation, he is bound to use ordinary diligence in collecting the collateral; but as regards other pledges, such as cotton, stocks of corporations, and the like, the obligation of the creditor is to exercise ordinary care in the preservation of the collateral, to the end that it may be delivered to the debtor when he pays the debt in substantially as good a condition as it was in when received." There is an unmistakable difference between the duty to collect amounts due on collateral and the privilege to sell collaterals that are not due and payable to either the pledgor

or pledgee. The manifest purpose of the Code section is to require the creditor to handle collaterals in good faith. This creditor knew, when taking the insurance policies as collateral that, if they became payable while in its hands, it would be to the interest of the debtor that it collect the same. This law is based upon reason, and there is no conceivable reason why it should impose a duty to collect some collaterals and permit one to refuse to collect others when they become due. To say that the debtors could have collected these insurance claims is to ignore the clause in the policies directing that they be paid to the creditor as its interest may appear. The pleadings show that the various policies are each in amount much less than the amount of the debt.

Counsel in their briefs call attention to the allegation of the petition that all of these policies were, at the time of filing this suit, in the hands of the receivers, and from this premise urge the conclusion that the creditor was thereby rendered unable to collect the same. A complete answer to this contention is found in the fact that it nowhere appears that the receivers had at all times held the policies since they became payable, or that because of the receivership the petitioner was prevented from collecting on such policies. It does not appear that there was any receivership for the petitioner. Did it violate its trust by surrendering custody of the trust property? The decisions of this court above cited do not deal with the question of attorney's fees, and, accordingly, no ruling is found therein as to whether or not the exaction of attorney's fees is an injury to a debtor, resulting from a failure to collect the collaterals, which the law will not allow him to suffer. But the Court of Appeals has repeatedly held that to require the debtor to pay attorney's fees would constitute injury as a result of the creditor's breach of duty in failing to collect the collaterals. *Kelley* v. *Farmers & Merchants Bank*, 6 *Ga. App.* 691 (65 S. E. 706) ; *Rylee* v. *Bank of Statham*, 7 *Ga. App.* 489, 495 (67 S. E. 383) ; *Loflin* v. *Howard*, 48 *Ga. App.* 373 (172 S. E. 831). These decisions are based upon sound reason. Clearly the additional expenditure in the form of attorney's fees would impose upon the debtor a burden which could not have been imposed had the main debt been satisfied before maturity with proceeds from the collaterals. It logically follows that where, as here, the creditor has negligently

failed to perform its duty, which results in default on the main debt, any resulting injury or additional expense should be paid by the creditor rather than by the debtors. Such a creditor acts in the capacity of a trustee for such collaterals (*Fisher* v. *George S. Jones Co.*, supra.) ; and, as said by the Court of Appeals in its decisions above cited, it is charged with the duty to collect and protect the same, and it would be contrary to law and equity to allow such creditor to collect from the debtor attorney's fees as a result of the default of the creditor. When the purpose of the Code, § 12-605, is fully recognized, it is plain that its intent is to require the creditor to collect any amount that may become due on each of the collaterals held. Any amounts becoming due, irrespective of the nature or character or technical name of the collaterals, are debts, and the collaterals upon which they are collectible are "evidences of debt" within the meaning and intent of the Code section. The insurance policies here involved imposed an obligation upon the insurer to pay stated amounts upon the happening of a named event, and further required that such payments be made to the creditor as its interest may appear. Even though such policies contained provisions limiting the amount of payment to the actual damage sustained, and further authorized the insurer to repair the damages, nevertheless the pleas and answers here positively assert that in this case the payments in cash of amounts exceeding the full amount of the debt were available and could have been obtained had the creditor requested the same. It follows that such collaterals were obligations on which sums of money became due and payable and were, therefore, evidences of debt in contemplation of the Code. The fire occurred in December, 1946. The insurance policies, which were deposited with this creditor, thereupon became due in amounts aggregating much more than the secured debt. The petition shows that the debt was not due at that time, and did not become due until the creditor elected to accelerate the maturity in conformity with the right conferred by the note and the security deed after the second default in payment of the interest instalment, which occurred on October 15, 1947. The petition shows further that no default of any sort in payment on the debt occurred until the interest instalment became due on April 15, 1947, and was not paid. Thus the pleadings show that for a

period of more than four months after the insurance became payable there was no default on the debt. In *Kelley* v. *Farmers & Merchants Bank,* supra, the period between the maturity of the collateral and the main debt was less than a month; and that court held that, had the creditor during such period fulfilled its obligation by collecting the collateral, it would have thus been paid and no default could have occurred. In the present case, the discharge of its duty by the creditor would have prevented a default, and would have made it impossible for the creditor to demand of the debtors payment of attorney's fees. If there is imposed upon the debtors a liability for the attorney's fees sought, that liability, according to the stricken pleas, is due solely to the default of the creditor instead of to the default of the debtors and would completely reverse the plain basis upon which both the contract and the law authorize and permit the exaction of attorney's fees in addition to interest. Attorney's fees are a penalty imposed upon a defaulting debtor because of his failure to fulfill his promise to pay, and are allowed in order that the creditor may be thus protected against expenses entailed in collecting the debt as a result of the debtor's default. Under the authorities we have cited, this creditor had a duty under the law to exercise ordinary diligence to collect all amounts becoming due on the collaterals, and is liable for any injury suffered by the debtors as a result of the breach of that duty. To allow the collection of attorney's fees would constitute such an injury to the debtors, and the pleas sought to avoid injury in the form of attorney's fees. Equity is not antagonistic to the law, but follows the law. Code, § 37-103. Hence, the creditor is held responsible for any breach of legal duty to his debtor. But equity goes further and refuses to aid any suitor who fails to do equity to the opposite party respecting the subject-matter of the suit. Code, § 37-104. "Equity considers that done which ought to be done, and directs its relief accordingly." § 37-106. In 2 Pomeroy's Equity Jurisprudence, 142, § 404, it is said: "It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; any really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose very foundation is good conscience. [And, if the conduct of the plaintiff be offensive to the dictates

of natural justice, then, whatever may be the rights he possesses, and whatever use he may make of them in a court of law, he will be held remediless in a court of equity.]" According to the pleas and answers, the petitioner has failed to perform its legal duty to these debtors concerning the subject-matter of the suit. It has, therefore, failed to do equity and failed to do that which it ought to have done, thus offending the equity maxim which requires that equity deny any relief so long as the petition contains a claim and prayer for attorney's fees, which if collected would be an injury to the debtors flowing from the creditor's breach of duty. The pleas and answers constitute a good defense, and the court erred in sustaining demurrers thereto and in dismissing the same. For the same reasons it was error to enter a final decree granting relief to the petitioner.

*Judgment reversed. All the Justices concur, except Head, J., who dissents.*