21393. MID-STATE HOMES INVESTMENT
CORPORATION *et al.* v. WIGGINS *et al.*

ARGUED SEPTEMBER 12, 1961—DECIDED OCTOBER 9, 1961—
REHEARING DENIED OCTOBER 24, 1961.

*George P. Dillard, Reuben M. Word,* for plaintiffs in error.
*Shirley C. Boykin, Wm. P. Johnson,* contra.

ALMAND, Justice. The bill of exceptions assigns error on orders overruling general demurrers to an equitable petition and the grant of an interlocutory injunction.

Monroe Wiggins filed his petition against Mid-State Home Investment Corporation, Jim Walter Corporation and Commercial Bank of Bowdon, Georgia, to enjoin Mid-State from selling a house and lot under a power of sale in a security deed executed by Wiggins' predecessor in title to secure an indebtedness as of January 1958, of $2,628. He alleged that a policy of fire insurance in the sum of $2,700 was in existence covering this property, with a loss-payable clause to Mid-State; that the house on the property secured in the deed to Mid-State was destroyed by fire in August 1960; and that the proceeds of the fire insurance policy payable to Mid-State were more than sufficient to pay the debt secured by the deed to Mid-State. It was alleged that the indebtedness having been satisfied, Mid-State was proceeding illegally in attempting to sell Wiggins' property under the power of sale contained in the security deed. As to the defendant Jim Walter Corporation, it was alleged that, after the house on the secured premises was destroyed by fire and after Wiggins had obtained his title to the property from John G. Freeman, Jim Walter Corporation with knowledge and notice of Wiggins' title to the property, under a contract with Freeman has rebuilt a house on Wiggins' lot and is claiming a lien against

the property in the sum of $2,145. As to Commercial Bank, Wiggins, after Freeman had deeded the house and lot to him, executed a deed to the bank to secure a loan of $2,857.86. A policy of fire insurance with a named company, at the time of the fire, was alleged to be in existence covering the property in the amount of $5,000, with a loss-payable clause to the bank. After the fire, the insurance company issued a draft for $1,800, payable to Wiggins, the Commercial Bank, and Mid-State. It was further alleged that the check was in the possession of Mid-State. The prayers of the petition were: (a) that Mid-State be enjoined from selling the described property; (b) that Jim Walter be enjoined from changing the status of the property; (c) that both of the aforenamed corporations have their liens canceled on the property; and that (d) Mid-State be required to deposit the $1,800 draft into the registry of the court.

To this petition Mid-State and Jim Walter filed their separate answers and a joint general demurrer. The general demurrers were overruled and certain special demurrers of Mid-State were sustained with leave to amend. Wiggins filed an amendment to his petition. No further objections or demurrers were interposed by the demurring defendants, nor was any further order entered by the court on the general demurrers. Mid-State and Jim Walter filed a written motion to strike the answer of Commercial Bank. The bill of exceptions recites that the court denied the motion without entering a written order, and error is assigned on the denial of the motion. After a hearing the court entered an order restraining the defendants as prayed in the petition.

■ ■ Headnotes 1 and 2 do not require any elaboration.

■ In substance the evidence brought out at the hearing was: John G. Freeman executed a deed to Jim Walter Corporation on January 24, 1958, covering the property in question, to secure a debt of $2,628. The debt was represented by 60 notes payable in monthly instalments of $43.80. This loan deed was on the same day transferred to the Mid-State Corporation. On March 5, 1958, Bankers Fire & Marine Insurance Company issued a policy of insurance to Freeman to cover the house on the prop-

erty against loss by fire in the sum of $2,700. This policy contained a loss-payable clause to Mid-State Corporation. The policy contained no prohibition against the insured obtaining additional insurance. The policy contained the following provision: "*Pro rata Liability*. This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not." On July 30, 1959, Freeman conveyed by deed the home and lot to Wiggins, which deed was recorded on July 31, 1959. On April 22, 1960, Wiggins by deed conveyed the property to Commercial Bank of Bowdon to secure a loan of $2,857.86. On February 16, 1960, New York Underwriters Insurance Company issued a policy of insurance to Wiggins covering the house on the premises against loss by fire. The amount of the policy was $5,000. The policy contained a mortgagee clause payable to Commercial Bank. In August 1960, the dwelling house was destroyed by fire. On August 10, 1960, John G. Freeman entered into a contract with Jim Walter to rebuild a house on the premises, for which Freeman agreed to pay $2,145. At that time Freeman had no interest in the property and Wiggins had no part in the rebuilding agreement, and Jim Walter Corporation had constructive notice that Wiggins owned the property. On January 18, 1961, New York Underwriters Insurance Company issued its draft in the sum of $1,806.49, payable to the order of Wiggins, Commercial Bank, Mid-State, and Earl Staples. The draft was forwarded to Mid-State for its endorsement. They retained the draft until after this suit was instituted. On March 2, 1961, Houston Fire & Casualty Insurance Company sent to Mid-State its check, payable to Mid-State in the sum of $537.48 to cover the loss under the Bankers Fire & Marine Company policy. This check was not cashed or accepted by Mid-State.

At the time Mid-State published its notice of intent to sell the property, eight monthly notes in the total amount of $398.02 were in default, and the total amount declared to be due was $1,532.80.

It thus appears that, at the time Mid-State declared the entire debt to be due and proceeded to sell the property under the power

376

of sale, it possessed the right to receive the proceeds of the $2,700 fire insurance policy in an amount to satisfy the debt to it of $1,532.80. Whether Mid-State would be able to collect a sum from the insurance company equal to the amount of the debt is unimportant, for it appears that the insurer offered to pay a sum in excess of the amount of the notes in default. In *Irwin v. Life & Casualty Ins. Co. of Tenn.*, 204 Ga. 582 (50 SE2d 354), the holder of a deed to secure debt sought by action to foreclose it as an equitable mortgage. The debtor and maker of the deed by answer asserted that, though the debt was due and unpaid, the property embraced in the security deed had been damaged by fire. He stated that the property was covered by fire-insurance policies with a loss payable clause to the plaintiff, and the total amount of the insurance was in excess of the indebtedness of the plaintiff. The defendant asserted that it would be inequitable for the plaintiff to foreclose its equitable mortgage because, if it had pursued its rights under the insurance policies, it would have received from the insurers an amount equal to the debt secured. The defendant prayed that the plaintiff be enjoined from proceeding with the foreclosure. This court held, as against demurrers of the plaintiff, that the answer stated a defense and that it was error for the trial court to permit the foreclosure to proceed.

Under the facts of this case and the case above cited, the court did not abuse its discretion in restraining Mid-State Corporation from exercising its power of sale. Nor did the court err in restraining Jim Walter Corporation from changing the status of the house on the property.

*Judgment affirmed. All the Justices concur.*