## 55411. NATIONWIDE FINANCIAL CORPORATION OF GEORGIA v. BANKS.

SMITH, Judge.

Banks brought an action against Nationwide, claiming Nationwide, in pursuing its remedies as a creditor, had violated provisions of Code Ann. Ch. 57-2, commonly known as the Second Mortgage Act. The trial court found in favor of Banks' motion for summary judgment, and Nationwide appeals, contending the court erred in construing the Foreclosure Sales Act (Code Ann. § 67-1503) and the Second Mortgage Act, and that the court erred in computing the forfeiture imposed by the Second Mortgage Act. We find a remaining issue of material fact, so the summary judgment was error; within that judgment, the damages were erroneously computed. We therefore reverse.

On January 24, 1975, Banks borrowed $13,216.44 from Nationwide, executing an installment loan agreement calling for a total of payments amounting to $19,296. This note was secured by a second mortgage on Banks' home, and by various personal property. After making eight monthly payments, Banks defaulted, and on March 2, 1976, Nationwide conducted a foreclosure sale of the real property. Nationwide was the only bidder, and it bid in on the property at $11,580.47, an amount which it admits to be the net principal amount owing at the time of the sale. Nationwide did not seek confirmation of this sale, and on May 4, 1976, it brought a personal property foreclosure action in the State Court of DeKalb

County.

Thereafter, Banks brought this action in the Superior Court of Dekalb County, as a consequence of which the superior court (1) permanently enjoined the personal property foreclosure proceedings in the state court; and (2) granted summary judgment on Banks' claim for damages. We quote the court's conclusions of law:

"(1) Both the promissory note in question and the Georgia Second Mortgage Act (Georgia Code Annotated Section 57-201) provide the right of prepayment of loans secured by secondary security instruments of the type involved herein and require a rebate of unearned interest.

"(2) The foreclosure sale of March 2, 1976, without a confirmation thereof, satisfied the indebtedness owed by the Plaintiff to Defendant on the promissory note in question. *Gentry v. Hibbler-Barnes Company,* 113 Ga. App. 1 [147 SE2d 31] (1966).

"(3) The acceleration by the Defendant of the promissory note executed by Plaintiff, said obligation having been accelerated and satisfied in full by the foreclosure sale of March 2, 1976, and the filing of the State Court action C-98588, seeking recovery of an amount which would have been due had the loan not been satisfied by the foreclosure sale and without crediting Plaintiff with the sum of $11,580.47 bid by the Defendant at the foreclosure sale amount to 'charge' by the seller in violation of the Georgia Second Mortgage Act (Georgia Code Annotated Ch. 57-2 et seq.) See *Bell v. Loosier of Albany, Inc.,* 237 Ga. 585 [229 SE2d 374] (1976); and *Liberty Loan Corporation of Shoals v. Childs et al.,* 140 Ga. App. 473 [231 SE2d 352] (1976).

"(4) The facts as stated above violated the Second Mortgage Act as it existed on May 4, 1976, (the date upon which the State Court action was filed) as well as the act as it provided on January 24, 1975 (the date upon which the above loan was made).

"(5) The act of the Defendant in filing and prosecuting Civil Action File No. C-98588 in the State Court of DeKalb County after the loan to Plaintiff had been accelerated and satisfied was an attempt to charge and collect a charge in excess of those charges provided for

in the Georgia Second Mortgage Act (Georgia Code Annotated § 57-2 et seq.).

"(6) The foreclosure sale of March 2, 1976, legally extinguished Plaintiff's debt to the Defendant.

"(7) The suit filed in the State Court of DeKalb County (Civil Action File No. C-98588) was predicated on the indebtedness which had been previously accelerated and satisfied and gave no credit to the Plaintiff for the amount of $11,580.00 bid by the Defendant at said sale and therefore constitutes a 'charge' and violation of the Georgia Second Mortgage Act."

The judgment awarded Banks "the sum of $13,216.44 principal; $6,079.56 in interest and other charges; $2,144.00 representing payments made on the loan by Plaintiff prior to its acceleration into the foreclosure, plus all cost of this litigation." In addition, the judgment declared the financing statement on the personal property to be void and unenforceable. Nationwide appeals.

1. The first enumeration contends that the court erred in concluding that the sale without confirmation satisfied the indebtedness owed Nationwide. The parties to this appeal have exhaustively argued the meaning of the Foreclosure Sales Act of 1935 (Ga. L. 1935, p. 381 et seq.; Code Ann. § 67-1503) which requires a confirmation of sale before any action may be taken to obtain a deficiency judgment. Does a foreclosure, without confirmation, operate automatically to extinguish the underlying indebtedness?[1] To answer that question here would be mere dictum, because by its terms the Act is not applicable in this case; it applies only where "at such sale said real estate does not bring the amount of the debt secured by such deed."

Nationwide admits that the net principal amount

---

[1] This question has been addressed, directly or indirectly, in the following cases: *Salter v. Bank of Commerce,* 189 Ga. 328 (6 SE2d 290) (1939); *Powers v. Wren,* 198 Ga. 316 (31 SE2d 713) (1944); *Gentry v. Hibbler-Barnes Co.,* 113 Ga. App. 1 (147 SE2d 31) (1966); *Turpin v. North American Acceptance Corp.,* 119 Ga. App. 212 (166 SE2d 588) (1969); First Federal Savings & Loan

due on the loan — hence, the amount of the debt secured by the deed — was $11,580.47. This is the amount brought by the sale. Nationwide insists that the sale brought nothing. However, the contrary appears from an instrument, in the record, entitled "Deed to Purchaser at Sale Under Power." This instrument states that Nationwide is the holder of a power of sale over certain property belonging to Banks, and that, at public outcry, Nationwide "was the highest and best bidder at and for the sum of . . . ($11,580.47) cash; and said property was then and there knocked off to it at said sum." Furthermore, Nationwide, as transferor of the property by virtue of the power of sale, expressly purported to consummate the transfer "for and in consideration of the sum of . . . ($11,580.47) in hand paid, the receipt of which is hereby acknowledged." Nationwide has never attacked the validity of this instrument. The instrument clearly shows that Nationwide bid in for the property at $11,580.47 and for that amount transferred the property to itself. Nationwide's belated claim that the property brought nothing, and that the figure of $11,580.47 was filled in for clerical expediency, is untenable.

The property having brought the full amount of the debt secured by the deed to secure debt, the Floreclosure Sales Act is inapplicable and has no bearing on this case. What *is* applicable here is simple arithmetic: $11,580.47 was owed; $11,580.47 was received; thereafter, no more was owed.

2. Did the personal property foreclosure proceeding in the state court amount to a "charge" in violation of the "Second Mortgage Act"? Ga. L. 1966, p. 574 et seq., as amended; Code Ann. Ch. 57-2. The second enumeration contends that the trial court erred in holding as a matter of law that this action did constitute such a charge. We find no error.

Ga. L. 1966, pp. 574, 577 (Code Ann. § 57-203), imposes a strict forfeiture penalty whenever "any loan secured by a secondary security deed is made in violation of the provisions of this Act, except as the result of bona

Assn. of Rochester v. Fisher, 422 FSupp. 1 (N.D. Ga. 1976), affd., 544 F2d 902 (5th Cir. 1977).

fide error." (This provision was amended by Ga. L. 1976, pp. 726, 727, to state that a loan can be made in violation of the Act "by the contracting for, charging, receiving or collecting any charge in excess of those expressly allowed by this Act." The following analysis shows that these new words result in no material difference under the facts of this case.) The loan agreement here, as it was originally executed, did not extract a charge in violation of the Act. However, Nationwide attempted to enforce the agreement in a manner which would extract an illegal charge. And recent cases have made it plain that whether a loan contract states a charge violative of loan Act provisions is dependent not only on the language of the contract but also on the manner those provisions are enforced. *Bell v. Loosier of Albany, Inc.,* 237 Ga. 585, supra; *Liberty Loan Corp. of Shoals v. Childs,* 140 Ga. App. 473, supra; *Thomas v. Universal Guardian Corp.,* 144 Ga. App. 869 (243 SE2d 101) (1978). The above cases involved different Acts, but their message is the same: A lender cannot do indirectly what he cannot do directly; he cannot escape forfeiture provisions by leaving contractual terms legitimate while enforcing them illegitimately.

After extinguishing the principal amount of this loan via the foreclosure sale, Nationwide filed an action seeking personal property foreclosure for the expressly stated purpose of satisfying the unpaid principal of the debt. No credit was given for the amount received via foreclosure. Attempting a double collection of the principal is not even arguably authorized by the Act; that attempt therefore constituted an unauthorized charge.

Though Nationwide's actions constituted a "charge," the forfeiture penalty will not be imposed if Nationwide can prove the charge was a result of "bona fide error." Nationwide contends that it has acted in good faith, and that if it did impose a charge, the imposition was the result of a bona fide error in filling in the deed, as discussed above. As we held, the deed speaks for itself insofar as abatement of the indebtedness is concerned. But Nationwide's contentions regarding the deed do raise a question of fact as to whether Nationwide was proceeding in good faith in seeking what it thought to be the remaining unpaid principal. Banks, as movant for

summary judgment, was required to eliminate this factual issue. *Ginn v. C. & S. Nat. Bank,* 145 Ga. App. 175 (1) (243 SE2d 528) (1978); CPA § 56 (Code Ann. § 81A-156). He failed to do so, and the trial court therefore erred in holding as a matter of law that the forfeiture penalties should be imposed. It remains for the trier of fact to determine whether Nationwide's imposition of an illegal charge resulted from a bona fide error.

3. The enumeration directed toward computation of damages is meritorious, and we address it here in view of the possibility that a forfeiture penalty would still be in order following resolution of the bona fide error question. The language embodied in Code Ann. § 57-203 provides for a *forfeiture,* no more, no less. It means simply that the lender will not be entitled to collect any principal, interest, or other charges. Whatever has already been collected must be returned; whatever has not yet been collected is ignored, for it is no longer the borrower's obligation. In this case, Nationwide had already collected $2,144 in payments, and it had collected $11,580.47 at the foreclosure sale. Under the forfeiture penalty, the total of those should be returned to Banks, but no more. And, of course, Banks would be relieved of any further obligation under the contract. The trial court erred in requiring Nationwide to pay Banks the principal, interest, and other charges called for in the loan contract, but which were never collected by Nationwide. Thus, the judgment, had it been otherwise correct, should have allowed Banks to recover a total of only $13,724.47.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

ARGUED MARCH 1, 1978 — DECIDED JULY 31, 1978 —

*Jones & Clark, Lewis N. Jones, Thomas H. Knuth,* for appellant.

*Simmons, Martin, Warren & Szczecko, Joseph Szczecko,* for appellee.