A91A0821. GEORGIA FARM BUREAU MUTUAL INSURANCE
COMPANY v. BREWER.
(413 SE2d 770)

SOGNIER, Chief Judge.

C. J. Brewer filed suit against Georgia Farm Bureau Mutual Insurance Company to recover fire insurance proceeds for the destruction of a house. The parties filed cross motions for summary judgment, and the trial court granted Brewer's motion and denied GFBM's motion. GFBM appeals.

On December 15, 1987, appellee sold a 51 acre tract of land and the residence located on the property to Darrell Northrup and Bonnie Northrup and took back a mortgage in the amount of $91,400. As required by the terms of their deed to secure debt, the Northrups obtained $51,000 in fire insurance for the house from appellant, listing appellee as the insured mortgagee. The Northrups defaulted on their mortgage payments in October 1988, and appellee began foreclosure

proceedings. The house was destroyed by fire on April 3, 1989. Appellee then proceeded with foreclosure, and at the May 2 sale he was the high bidder, bidding $96,662, which he has acknowledged was sufficient to cover the outstanding indebtedness plus his fees and expenses. In July, appellee filed a claim of loss under the policy issued by appellant. He did not repair the house, but instead sold the property on November 1, 1989 for $65,000. The trial court ruled that appellee was entitled to recover $31,662 of the insurance proceeds to cover his net loss after the resale, and that the remaining $19,338 of the proceeds should be paid to the Northrups.

The question presented on appeal is whether appellee's post-fire acquisition of the property in foreclosure for the full amount of the debt extinguished his insurable interest so that he was no longer entitled to the insurance proceeds. This is an issue of first impression in Georgia. Appellant urges us to follow the rule adopted in other jurisdictions, which is that once a mortgagee satisfies the debt by bidding in the full amount at foreclosure, the mortgagee, by voluntarily taking the property in exchange for the debt, extinguishes the debt and thereby terminates any insurable interest in the property. *Rosenbaum v. Funcannon*, 308 F2d 680 (9th Cir. 1962); *Northwestern Nat. Ins. Co. v. Mildenberger*, 359 SW2d 380 (Mo. Ct. App. 1962); *Whitestone Savings &c. Assn. v. Allstate Ins. Co.*, 270 NE2d 694 (NY Ct. App. 1971); see *Nationwide Mut. Fire Ins. Co. v. Wilborn*, 279 S2d 460, 463-464 (Ala. 1973). Similarly, in *Calvert Fire Ins. Co. v. Environs Dev. Corp.*, 601 F2d 851, 856 (5th Cir. 1979), a case involving Georgia law, the former Fifth Circuit held that "[w]here a fire loss occurs and a loss-payee is thus vested with rights under the insurance policy, subsequent partial or full extinguishment of the debt giving rise to the insurable interest will reduce the loss-payee's interest in the proceeds to the extent the debt has been satisfied. [Cits.]" These courts have reasoned that since the purpose of the insurance is to provide security for the payment of the debt, once the debt is fully satisfied any right to the insurance is extinguished. See id.; see also *Northwestern Nat.*, supra at 385.

Notwithstanding this authority from other jurisdictions, after thoroughly reviewing the trial court's order and applicable Georgia law we are persuaded that the trial court fashioned the proper rule by looking to the actual loss rather than the termination of a legal interest, and accordingly we affirm. Appellee, as a mortgagee, clearly had an insurable interest in the property because he would suffer a pecuniary loss if the property were destroyed by fire. *American Reliable Ins. Co. v. Woodward*, 143 Ga. App. 652, 653 (1) (239 SE2d 543) (1977); see OCGA § 33-24-4 (a), (c). Under Georgia law, the right of a mortgagee to insurance proceeds is determined at the time of the loss. *Pacific Ins. Co. of NY v. R. L. Kimsey Cotton Co.*, 114 Ga. App. 411,

415-416 (3) (151 SE2d 541) (1966); see OCGA § 33-24-4 (b). Therefore, at the time of the fire appellee was entitled to the proceeds to the extent of his loss. Similarly, if the fire had occurred after the foreclosure, under the terms of the mortgage clause in the policy appellee also would have been entitled to the insurance proceeds. See *Federal Nat. Mtg. Assn. v. Hanover Ins. Co.*, 243 Ga. 609 (255 SE2d 685) (1979).

We reject the theory that because appellee subsequently took the property in foreclosure in exchange for the debt, this entitlement was extinguished. The principle that a bid by a mortgagee of the full amount of the indebtedness extinguishes the mortgage exists to preclude the mortgagee from pursuing the *mortgagor* for a deficiency once the debt has been satisfied. See generally *Nationwide Fin. Corp. of Ga. v. Banks*, 147 Ga. App. 73, 75-76 (1) (248 SE2d 54) (1978); *Turpin v. North American &c. Corp.*, 119 Ga. App. 212, 217 (1) (166 SE2d 588) (1969). Once the mortgagee receives satisfaction of the debt, it is not entitled to seek an additional recovery from the mortgagor. See *Nationwide Fin. Corp. of Ga. v. Banks*, supra at 77 (1). We see no reason for applying that rule to preclude recovery from an *insurer*, which is contractually obligated to compensate the mortgagee for loss of or damage to the insured property. Here, the elimination of the Northrups' legal liability to appellee by his bidding in the amount of the debt does not change the fact that appellee nonetheless suffered a direct pecuniary loss as a result of the fire because he previously held a mortgage payable in the amount of $91,400, but in foreclosure exchanged it for property worth only $65,000. Accordingly, we hold appellee was entitled to the insurance proceeds to the extent of his actual net loss — i.e., the difference between the amount he bid in foreclosure and the value of the damaged property, as established here by its resale value. See OCGA § 33-24-4 (c).

This result is consistent with the economic loss analysis set forth by a two-judge plurality in *Palmer v. Mitchell County Fed. Sav. &c. Assn.*, 189 Ga. App. 646 (377 SE2d 4) (1988), which arose under a similar factual setting but with a different procedural posture. The mortgagee foreclosed after a fire by bidding in the amount of the remaining indebtedness and then collected the insurance proceeds of $24,031.07. After repairing the property, the lender sold it for a net loss of $1,784 (the difference between the foreclosure bid plus repair costs and the resale proceeds plus the insurance proceeds). The mortgagors then brought suit against the lender, contending they were entitled to the insurance proceeds. In dicta, the two-judge plurality acknowledged the majority rule that extinguishment of the debt in foreclosure terminates a mortgagee's interest in the insurance pro-

ceeds, citing *Whitestone*, supra, and *Calvert*, supra,[1] but did not apply that rule to compel return of the insurance proceeds. Instead, the court reasoned that the lender, rather than the insurance company, could not be liable to the mortgagors for its receipt of the insurance proceeds from the insurance company. The plurality opinion further recognized there was no basis for a claim of unjust enrichment because the lender had incurred a net loss on the acquisition and resale of the property even after application of the insurance proceeds, thus recognizing the principle of basing the mortgagee's recovery on its actual loss rather than the extent of its legal interest.

Appellant's policy arguments are without merit. We agree with appellee and the trial court that payment to appellee of the insurance proceeds to the extent of his net loss does not result in a double recovery or windfall because appellee, like the mortgagee in *Palmer*, incurred a net loss after the foreclosure and resale. In addition, as the trial court in this case correctly recognized, there is no risk of fraud because "the mortgagee merely bids the amount of the outstanding debt, which is the common procedure, and the amount of recovery [from the insurer] is based not upon what the mortgagee claims the property is worth but on the resale price or on the cost of repairs if the mortgagee decides to retain the property. The rights of the mortgagors can still be determined on the date of the foreclosure . . . ." Moreover, although insurance carriers undoubtedly have an interest in uniformity of the law across jurisdictional boundaries, that interest must yield to our State's policy of enforcing contractual obligations and mandating that insurance policies cover actual economic losses.

Finally, we do not read the decision in *Mid-State Homes Investment Corp. v. Wiggins*, 217 Ga. 372 (3) (122 SE2d 106) (1961) to require a contrary result, for in that case the court merely held that there was no abuse of discretion in a trial court's decision to enjoin foreclosure proceedings begun after a fire loss where the tendered insurance proceeds were sufficient to satisfy the debt. While it may be a better practice for the mortgagee to collect the insurance proceeds and apply them to the indebtedness rather than foreclosing, we find no basis for holding that the failure to do so extinguishes the insurer's obligation to honor a contractual obligation where there has been an actual loss or impairment of an insurable interest in a property.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

---

[1] To the extent that *Palmer* could be interpreted to hold that the *Whitestone* rule applies in Georgia, that ruling constitutes physical precedent only. Court of Appeals Rule 35 (b).

Decided November 21, 1991 —
Reconsideration denied December 3, 1991 — 

*Drew, Eckl & Farnham, Edward G. Sullivan, Philip W. Savrin,* for appellant.
*Thomas A. Camp,* for appellee.