A96A1990. OWENS v. GEORGIA UNDERWRITING ASSOCIATION.
(476 SE2d 810)

ELDRIDGE, Judge.

Katheryn E. Harris borrowed $20,000 from D. Ronald Owens, appellant, to purchase a house from her grandfather's estate and gave a deed to secure debt for the improved realty at 6750 Ridge-Moore Drive, Doraville, Gwinnett County, on March 19, 1992.

Georgia Underwriting Association, appellee, issued a comprehensive fire and theft homeowners insurance policy on the property with Harris as owner and named insured and appellant as the named insured mortgagee on May 17, 1993, for the coverage period May 18, 1993, through May 18, 1994.

On January 1, 1994, the dwelling was destroyed by fire; on January 11, 1994, Harris was arrested and charged with arson in burning the house. Harris was in debt, was delinquent on the property taxes, which were to be foreclosed that month, and the mortgage payments to appellant were several months in arrears.

On the date of the fire loss, the balance on the mortgage was $20,117.32. Appellant made an insurance loss claim on January 6, 1994. On January 31, 1994, appellant made a demand for payment of the balance due on the mortgage of $20,117.32. Appellant was informed by appellee that so long as Harris could make a claim, then he could not be paid under the terms of the policy unless she waived the right to make such claim. Harris filed no claim or proof of loss for

the property during the one-year claims period. After the contractual limitation period had run and after appellant sued appellee for the face amount of the policy, $35,000, appellee paid to appellant the undisputed amount of $12,696.87 on December 26, 1995.

In October 1994, appellant paid Harris $1,300 for her equity of redemption in the lots that the burned dwelling sat upon, although appellant could have foreclosed the mortgage, which was over a year in default. In November 1994, appellant sold the lots to John and Kim Cauble for $10,000. On April 27, 1995, appellant filed with the clerk of the Superior Court of Gwinnett County a satisfaction and cancellation of the deed to secure debt from Harris.

Appellee, upon the expiration of the one-year policy claims period without any claim by Harris, sent to Harris notice that any claims by her were now barred and were denied so that appellant's claim could be met.

Upon request by appellant, appellee provided him with a copy of the policy. After Harris's potential claim had become barred under the policy, appellee made an offer to pay appellant. As a condition precedent to payment of the mortgagee under the terms of the policy, appellee demanded that the deed to secure debt be transferred and assigned by appellant; appellant could not carry out this policy condition because he had previously sold the lots and had the deed to secure debt cancelled. Appellee had informed appellant prior to the one-year claim period running that, without a waiver by Harris, his claim as mortgagee could not be settled. Harris repeatedly refused to execute a waiver to allow appellee to pay appellant. Appellee extended the one-year claims period for appellant so that his claim could be made after Harris's potential claims had become barred.

Since appellant made it impossible to settle under the policy terms by assignment of the deed to secure debt in return for the payment of the loan balance, then appellee offered to pay appellant his economic loss after a setoff for the sales price of the lots and the addition of the taxes and sum paid to Harris to get title; appellant rejected such offer and demanded that the full loan balance without setoff, be paid. Subsequently, appellant sued appellee for the face sum of the insurance of $35,000 on February 28, 1995. After suit was filed, appellee tendered appellant the undisputed sum of $12,696.87, which represented the loan balance plus the sum paid in property taxes to save the property from tax sale plus the sum paid to Harris for her to transfer her title with a setoff of $10,000 for the sale of the lots.

The state court upon motion for summary judgment by appellee granted the motion on May 2, 1996, and appellant appealed.

1. Enumerations of error 1 through 3 raise essentially the same issue that the trial court erred in granting summary judgment based

upon the mortgagee's insurable interest computed by an economic loss analysis.

The insurance policy language regarding insurable interests states that any loss payable will be paid "to the mortgagee and you, as interests appear." Under policy conditions, it states: "Insurable Interest and Limit of Liability. Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss: a. for an amount greater than the interest of a person insured under this policy. . . ."

The mortgagee's interest must be determined as of the date of loss so that the mortgagee receives no more than nor less than is due. *Ga. Farm Bureau Mut. Ins. Co. v. Brewer*, 202 Ga. App. 127 (413 SE2d 770) (1991); *Palmer v. Mitchell County Fed. Sav. &c. Assn.*, 189 Ga. App. 646 (377 SE2d 4) (1988); *Pacific Ins. Co. &c. v. R. L. Kimsey Cotton Co.*, 114 Ga. App. 411, 415-416 (151 SE2d 541) (1966).

While *Brewer*, supra, is not on all fours with the case sub judice, it illustrates why an economic loss analysis must be used; because to do otherwise would allow unjust enrichment and an economic windfall by the mortgagee beyond his economic interests that the insurance was to protect and would impose a liability beyond the terms of the insurance agreement that had been bargained for by the insurer and the insured. Under an economic analysis, the mortgagee has been made whole for all of his economic losses at the time of the fire; he cannot stand in a superior position, thereby gaining an unjust enrichment beyond his insurable interest. Thus, the trial court properly offset appellant's receipts from the sale of the lots, while at the same time increasing appellant's losses by the cost to protect the interest by paying the delinquent taxes, as well as by the purchase price paid to Harris to obtain free and clear title to the land. Appellant, by his actions, had breached the terms of the contract of insurance by canceling the deed to secure debt and conveying away the land, instead of transferring such interests to appellee in exchange for payment of his loan balance at the time of the fire; the only legal way in which the contract terms could then be carried out was to give the appellee a setoff for what appellant had already received to satisfy his losses. See OCGA § 9-2-4.

In *Rice v. State Farm &c. Ins. Co.*, 208 Ga. App. 166, 171 (2) (430 SE2d 75) (1993), this Court held, with regard to the use of economic loss analysis to reduce the amount of recovery, "the trial court's entry of judgment was consistent with the general legal policy in this state prohibiting windfall and double recovery. Cf. OCGA § 9-2-4; [*Brewer*,] supra at 129." See also *Calvert Fire Ins. Co. v. Environs Dev. Corp.*, 601 F2d 851 (5th Cir. 1979).

The term in insurance policies "as interest may appear" has been construed by this Court to limit insurance claims to the actual inter-

est held at the time of loss. See *Simmons v. American Security Ins. Co.*, 107 Ga. App. 364 (130 SE2d 351) (1963); *Ga. Cas. &c. Co. v. Pincus*, 89 Ga. App. 836 (1) (81 SE2d 527) (1954); *Johnson v. Gen. Exchange Ins. Corp.*, 49 Ga. App. 780 (176 SE 840) (1934); *Simon v. Mechanics Ins. Co. &c.*, 31 Ga. App. 137, 139 (1) (121 SE 342) (1923).

The trial court did not err in using an economic loss analysis or in granting summary judgment.

2. The fourth enumeration of error is that the trial court erred in calculating the setoff and by not considering appellant's accrued interest.

As held in Division 1, loss becomes fixed at the time of the casualty, so that appellant's subsequently accrued interest on the note may be a liability of the debtor, Harris, at the time of the judgment, but was not a proper claim under the terms of the policy coverage.

The case sub judice falls outside the ambit of the Unfair Claims Act, OCGA §§ 33-6-30; 33-6-37.

The trial court properly calculated that the sum due appellant under the policy was $12,696.87, after appropriate additions and setoff.

3. The fifth enumeration of error is that the trial court erred in overruling appellant's objection to the admission by the trial court of an uncertified copy of a "standard fire policy."

The Administrative Procedure Act, OCGA § 50-13-1 et seq., applies to the Insurance Commissioner, because OCGA § 50-13-2 neither expressly exempts the office nor exempts the subject matter. Under OCGA §§ 50-13-3 through 50-13-5 all rules and regulations promulgated by such office, including approved insurance policy forms, must be filed of record with the Secretary of State. OCGA § 50-13-6. The Secretary of State shall publish such compilation of rules and regulation for public use. OCGA § 50-13-7. Any court can take judicial notice of the rules and regulations of the executive branch that have been filed with the Secretary of State after adoption under the Administrative Procedure Act. OCGA § 50-13-8; see *Dix v. State*, 156 Ga. App. 868 (275 SE2d 807) (1981).

The "standard fire policy" has been adapted as a rule under the Rules of Comptroller General, Insurance Department, 120-2-19-.01, and published by the Secretary of State in the Registry of the Rules and Regulations of the State of Georgia. Therefore, the trial court could take judicial notice of the "standard fire policy" without having a certified copy introduced into evidence.

Notwithstanding the above, there is no indication that the trial court relied upon the "standard fire policy" but instead relied upon the actual policy put into evidence by both parties. There is no evidence that the actual policy deviated from the "standard fire policy."

When a movant for summary judgment pierces the pleadings of

the respondent as to an essential element by showing its absence, the respondent has shifted to him the burden of coming forward with some evidence on the issue so as to put in dispute a material fact as an issue for jury determination or to have the issue decided as a matter of law. See *Lau's Corp. v. Haskins*, 261 Ga. 491, 493 (2), 494 (405 SE2d 474) (1991); *Holiday Inns v. Newton*, 157 Ga. App. 436 (278 SE2d 85) (1981); *Holland v. Sanfax Corp.*, 106 Ga. App. 1 (126 SE2d 442) (1962). Appellant failed to come forward with any evidence to show that there was any deviation between the actual policy and the "standard fire policy" when the burden of coming forward with the evidence shifted to him. The trial court did not err in finding on this issue that appellant failed to carry his burden of producing evidence.

4. The sixth enumeration of error is that the trial court erred in finding as a matter of law that there had been no bad faith which would authorize the award of penalties and attorney fees.

In *Colonial Life &c. Ins. Co. v. McClain*, 243 Ga. 263, 264-265 (253 SE2d 745) (1979), the Supreme Court held: "The standard for reviewing any judgment is whether the evidence is sufficient to support the verdict. Under the rule announced in [*Interstate Life &c. Ins. Co. v. Williamson*, 220 Ga. 323 (138 SE2d 668) (1964)] and [*Travelers Ins. Co. v. Sheppard*, 85 Ga. 751, 765 (12 SE 18) (1890)] the insurer's defense must be evaluated because if there was 'reasonable and probable cause to make it' an award for damages and attorney fees for bad faith is not authorized. Not every defense bars a finding of bad faith. It is a defense which raises a reasonable question of law or a reasonable issue of fact though not accepted by the trial court or jury. . . . The proper rule is that the judgment should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer." See also *Rice v. State Farm &c. Co.*, supra.

Appellant, in response to the motion for summary judgment, failed to produce evidence which would raise a material issue of fact that appellee's failure to pay was either frivolous or unfounded. In fact, appellant's claim that he stood in the shoes of the named insured and was entitled to the face amount of the policy without a transfer and assignment of the claims of the insured was sufficient reason to defend without the issue of appellee's right to a setoff for the sale of the lots contrary to the terms of the policy, thereby requiring the mortgagee to transfer and assign any interest to appellee in return for payment of the loan balance at the time of loss. Appellant's assertion that interest accrued after the fire would be part of his loss also provided a reasonable basis for defense. The trial court did not err in granting summary judgment on this issue as well.

*Judgment affirmed. Johnson and Ruffin, JJ., concur.*

34

DECIDED OCTOBER 1, 1996.

*Phillip N. Lavender*, for appellant.
*Swift, Currie, McGhee & Hiers, Michael H. Schroder, MaryBeth V. Gibson*, for appellee.