A10A0387. BALBOA LIFE AND CASUALTY, LLC v. HOME BUILDERS FINANCE, INC.
(697 SE2d 240)

ANDREWS, Presiding Judge.

This case involves a dispute over the payment of insurance proceeds due under a policy issued by Balboa Life and Casualty, LLC and Meritplan Insurance Company (the insurer) covering a residence damaged by fire. The policy issued to the residence owner contained a loss payable provision giving an interest in the insurance proceeds to Home Builders Finance, Inc. d/b/a Owner Loan Services (the mortgagee) which held the owner's mortgage debt and a security deed over the residence requiring that the owner have insurance with the loss payable provision. The mortgagee sued the insurer claiming it breached a contractual obligation to pay the mortgagee all the insurance proceeds due under the policy. The suit also sought to enforce an alleged partial settlement agreement with respect to payment of the insurance proceeds and sought bad faith penalties pursuant to OCGA § 33-4-6 and litigation expenses pursuant to OCGA § 13-6-11. The insurer appeals from the trial court's grant of the mortgagee's motions for summary judgment and for enforcement of the settlement agreement, and from the denial of the insurer's motion for summary judgment. For the following reasons, we affirm in part and reverse in part.

On August 4, 2006, the insured residence was partially destroyed by fire. It is undisputed that in January 2007 the insurer agreed to pay the full amount due under the policy — $103,000 in proceeds the insurer agreed was necessary to repair the damaged residence — by issuing two checks totaling $103,000 both made payable to the owner and the mortgagee. Although the checks were issued by the insurer directly to the owner with instructions to obtain the mortgagee's endorsement, the owner forged the endorsement and absconded with the $103,000 without making any repairs on the insured residence. After the owner defaulted on his mortgage obligation, the mortgagee exercised power of sale provisions in the security deed and conducted a nonjudicial foreclosure sale on November 6, 2007. At the foreclosure sale, the mortgagee successfully bid $150,000 and took title to the residence. The amount owed on the mortgage as of the date of foreclosure was $285,081.43. The mortgagee did not obtain confirmation of the foreclosure sale. The mortgagee discovered during the foreclosure process that the owner had forged its endorsement on the

insurance proceeds checks and absconded with the proceeds. Through the efforts of the mortgagee, the bank which issued payment to the owner on the forged endorsements eventually refunded the $103,000 to the insurer. After engaging in correspondence with the insurer about payment of the refunded insurance proceeds, the mortgagee filed suit against the insurer on June 20, 2008, seeking payment of the entire $103,000 of insurance proceeds plus bad faith penalties and attorney fees.

1. The insurer contends that the trial court erred by granting summary judgment in favor of the mortgagee for all of the insurance proceeds in the amount of $103,000.

The policy provided for payment of insurance proceeds to the mortgagee under the loss payable provision as "its interests may appear," and specifically provided that the mortgagee's interests "shall not be invalidated nor suspended . . . by the commencement of foreclosure proceedings or the giving of notice of sale of any of the property covered by this policy by virtue of any mortgage." After the fire loss, the mortgagee as loss payee under the policy was vested with an interest in the insurance proceeds as security for payment of the mortgage debt, and the owner's interest in the proceeds remained only to the extent the proceeds exceeded the mortgage debt. *Beasley v. Agricredit Acceptance Corp.*, 224 Ga. App. 372, 374 (480 SE2d 257) (1997). At issue is the extent of the mortgagee's right to the insurance proceeds to pay the mortgage debt where, after the loss, the mortgagee foreclosed on the insured property.

Because insurance proceeds are an alternative source of payment on the mortgage debt, the mortgagee's right to insurance proceeds is extinguished to the extent the debt is paid by other sources, including foreclosure by the mortgagee. See *Calvert Fire Ins. Co. v. Environs Dev. Corp.*, 601 F2d 851, 856 (5th Cir. 1979). To prevent a double recovery by the mortgagee, "[e]quity requires that subsequent events such as payment of the underlying debt not be ignored when the court distributes the insurance proceeds." Id. We addressed this issue for the first time in *Ga. Farm &c. Ins. Co. v. Brewer*, 202 Ga. App. 127 (413 SE2d 770) (1991), and adopted an economic analysis rule to determine if the foreclosing mortgagee named in a loss payable provision in a casualty insurance policy was entitled to insurance proceeds payable for fire damage to the insured property. The mortgagee in *Brewer* acquired title to the damaged property at its own foreclosure sale by bidding its outstanding mortgage debt in the amount of $96,662, and then resold the unrepaired property to a third party for $65,000. Id. at 127-128. *Brewer* recognized the general rule set forth in *Calvert*, supra, but declined to follow *Calvert* to the extent the decision held that, when a mortgagee makes a successful foreclosure bid in the amount of the

YALE LAW LIBRARY

480

outstanding mortgage debt (thereby extinguishing the debtor's liability) this necessarily terminates the mortgagee's insurable interest in the property and any claim to insurance proceeds. *Brewer*, 202 Ga. App. at 128-130. Rather, *Brewer* held that, where the mortgagee extinguishes the debtor's liability by acquiring the property at foreclosure for a bid in the amount of the outstanding debt, this principle "exists to preclude the mortgagee from pursuing the [debtor] for a deficiency once the debt has been satisfied." Id. at 129. *Brewer* found that this principle did not preclude the mortgagee from claiming a right to insurance proceeds for damage to the insured property to the extent the actual value of the property acquired by foreclosure was less than the outstanding mortgage debt. Id. Thus *Brewer* found that the $65,000 resale established the actual value of the property and showed that the mortgagee was entitled to insurance proceeds to the extent of its net loss after foreclosure of $31,662 — the difference between the $96,662 mortgage debt at the time of the foreclosure and the $65,000 resale price. Id. at 128-129. The economic analysis adopted in *Brewer* involves an equitable consideration of events subsequent to the insured loss, including foreclosure by the mortgagee, which show the extent of payment on the underlying debt. Id. at 130; *Calvert*, 601 F2d at 856. The analysis is not necessarily based on what the mortgagee bid for the insured property in the foreclosure sale, but rather on resale price or other evidence establishing the fair market value of the property. *Brewer*, 202 Ga. App. at 130.

In the present case, the mortgagee acquired title to the residence with a foreclosure sale bid of $150,000, did not seek confirmation of the sale to establish the residence's fair market value, and still has title to the residence. In the absence of evidence showing that the $150,000 bid at foreclosure was not the fair market value of the residence, we accept the bid as establishing the fair market value under the economic analysis adopted in *Brewer*, supra. On this record, we find that the mortgagee established a basis for an award of the entire $103,000 of insurance proceeds by showing that its net loss after foreclosure — the difference between the $285,081.43 mortgage debt at the time of foreclosure and the $150,000 value of the residence acquired at foreclosure — exceeded the available $103,000 of insurance proceeds. The trial court correctly found, although for different reasons, that there was a basis to award the mortgagee $103,000 of insurance proceeds. Under the right for any reason rule, we affirm the trial court's grant of summary judgment only as to the basis for awarding the mortgagee $103,000 of insurance proceeds. The trial court's grant of summary judgment is reversed to the extent it actually awarded the mortgagee $103,000 of insurance proceeds. Whether or not the mortgagee is entitled to the

award of these proceeds is subject to a factual determination on the merits of the insurer's pending defense that the mortgagee's claim was barred by the policy provision requiring that suit be brought within one year after the date of loss. See Division 2, infra. The trial court did not err by denying the insurer's motion for summary judgment seeking a ruling that the mortgagee was entitled to only a portion of the $103,000 of insurance proceeds.

2. Because a factual issue remains, the trial court correctly denied the insurer's motion for summary judgment claiming that the mortgagee's action was barred because it failed to file the action prior to expiration of a provision in the insurance policy stating that "[n]o action can be brought unless . . . the action is started within one year after the date of loss."

The policy specifically provided that the mortgagee was bound by this provision. The insured loss occurred on August 4, 2006, and the mortgagee did not commence this action until June 20, 2008. Although a policy provision requiring that an action be commenced within one year of the insured loss is valid, it can be waived "where the [insurer] leads the insured by its actions to rely on its promise to pay, express or implied." (Citation and punctuation omitted.) *Auto-Owners Ins. Co. v. Ogden*, 275 Ga. 565, 567 (569 SE2d 833) (2002); *Commercial Union Ins. Co. v. F. R. P. Co.*, 172 Ga. App. 244, 245-246 (322 SE2d 915) (1984).

> If the insurer never denied liability, but continually discussed the loss with its insured with a view toward negotiation and settlement without the intervention of a suit, whether or not this lulled the insured into a belief that the 12-month clause in the contract was waived by the insurer can become a disputed question of fact for the jury.

(Punctuation omitted.) *Ogden*, 275 Ga. at 567. There is evidence that, up to the date the mortgagee filed suit, the insurer never denied liability and took actions (including issuing checks for payment) which represented that it intended to pay the claim without suit. An issue of fact was presented as to whether this lulled the mortgagee into a belief that the one-year limitation for filing the action was waived. Id.; *Nee v. State Farm Fire &c. Co.*, 142 Ga. App. 744 (236 SE2d 880) (1977). The trial court erred to the extent it ruled on summary judgment that the one-year provision was waived as a matter of law.

3. The insurer claims that the trial court erred by denying its motion for summary judgment seeking dismissal of the mortgagee's claims for bad faith damages under OCGA § 33-4-6 and litigation expenses under OCGA § 13-6-11.

Under OCGA § 33-4-6 (a), an insurer is liable for a bad faith penalty and reasonable attorney fees "[i]n the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith. . . ." Accordingly, to prevail on a claim under OCGA § 33-4-6 (a), the insured has the burden of proving: (1) that the loss is covered by the policy; (2) that after the insured demanded payment, the insurer refused to pay the covered loss for more than 60 days prior to suit being filed; and (3) that the insurer acted in bad faith in refusing to pay. *Bayrock Mtg. Corp. v. Chicago Title Ins. Co.*, 286 Ga. App. 18, 19 (648 SE2d 433) (2007). Because the statute imposes a penalty, its requirements are strictly construed. Id.

In support of its claim that the insurer acted in bad faith in refusing to pay the entire $103,000 of insurance proceeds, the mortgagee points to three letters it sent more than sixty days before it filed suit for all the proceeds. The first letter was sent to the insurer on June 19, 2007, "demanding payment with regard to this insurance policy." This letter was sent to the insurer after the insurer had issued checks jointly payable to the owner and the mortgagee for the entire amount of the insurance proceeds; apparently before the parties learned that the owner had forged the mortgagee's endorsement on the checks and absconded with the proceeds; and prior to the mortgagee's decision to foreclose on and take title to the insured residence. The letter did not specify the interest in or the amount of the proceeds the mortgagee was demanding. The second letter was sent to the insurer on March 12, 2008, shortly after the insurer had recovered the insurance proceeds from the bank which paid the forged insurance checks, and after the mortgagee foreclosed on and took title to the insured residence. This letter recognized that the insurer had previously paid all the insurance proceeds and that the owner had absconded with the proceeds; stated that the mortgagee was informed that the insurer had recently received a refund of the insurance proceeds from the bank; and asked that the insurer "please contact the undersigned at once to coordinate the reissuance of those checks." The letter did not state that the mortgagee had foreclosed on and acquired title to the insured residence, and did not specify the interest in the proceeds the mortgagee was claiming subsequent to foreclosure. The third letter dated April 4, 2008 was sent to the bank which paid on the forged endorsements and simply asked for verification that the proceeds had been refunded to the insurer. A copy of this letter was sent to the mortgagee. The record shows that, after receiving the second letter, the insurer responded to the mortgagee that it was investigating the claim, and requested information about whether the insured resi-

dence had been sold at foreclosure, the sales price, and the amount of any unpaid loan balance — information relevant to determine the mortgagee's interest in the insurance proceeds. The mortgagee provided this information to the insurer in a letter dated April 23, 2008, less than 60 days before the mortgagee filed suit on June 20, 2008, seeking the entire amount of the insurance proceeds and bad faith penalties.

The mortgagee ultimately showed that, after foreclosing on and obtaining title to the residence, it incurred a net loss which gave it a right to the entire $103,000 of insurance proceeds. But the record shows that the information necessary for the insurer to conclude that the mortgagee had a right to claim the entire $103,000 of insurance proceeds was provided to the insurer less than 60 days before suit was filed, and that the mortgagee made no demand for payment of all the insurance proceeds after that information was provided. "Bad faith is shown [under OCGA § 33-4-6 (a)] by evidence that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment." (Citation, punctuation and emphasis omitted.) *Lawyers Title Ins. Corp. v. Griffin*, 302 Ga. App. 726, 731 (691 SE2d 633) (2010). The insurer had good reason for delaying payment until it acquired the necessary information about the foreclosure less than 60 days before suit was filed. On this record, we find as a matter of law that the mortgagee was not entitled to bad faith damages under OCGA § 33-4-6 (a).

The mortgagee's claim for expenses of litigation, including attorney fees, under OCGA § 13-6-11 was not authorized because "[t]he penalties contained in OCGA § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds." *Howell v. Southern Heritage Ins. Co.*, 214 Ga. App. 536, 537 (448 SE2d 275) (1994). The trial court erred by denying the insurer's motion for summary judgment seeking dismissal of the mortgagee's claims for bad faith damages under OCGA § 33-4-6 and litigation expenses under OCGA § 13-6-11.

4. The trial court erred by granting the mortgagee's motion to enforce an alleged settlement agreement reached between the insurer's attorney and the mortgagee's attorney to pay the entire $103,000 of insurance proceeds.

Correspondence from the insurer's attorney to the mortgagee's attorney indicated that the insurer had mailed a check to the mortgagee for the $103,000 of insurance proceeds. The mortgagee's attorney responded by letter that no check had been received and that $103,000 would not be sufficient. The insurer's attorney responded by letter that the $103,000 check was in the mail and that

it was understood the mortgagee did not accept it as full satisfaction of the claim. The letter further stated: "However, if you do receive the check, it is agreed that you may negotiate it without prejudice to your client's claim for additional sums as you referenced in your most recent correspondence." It is undisputed that no check from the insurer was ever received by the mortgagee or the mortgagee's attorney. We have no difficulty in concluding that the correspondence regarding the phantom check in the mail did not constitute a settlement agreement. See *Butler v. Household Mtg. Svcs.*, 266 Ga. App. 104 (596 SE2d 664) (2004).

*Judgment affirmed in part and reversed in part. Ellington and Doyle, JJ., concur.*

DECIDED JUNE 18, 2010.

*Hall, Booth, Smith & Slover, Denise W. Spitalnick, James H. Fisher II*, for appellants.

*Smith, Welch & Brittain, John P. Webb*, for appellee.