A92A2349. RICE v. STATE FARM FIRE & CASUALTY COMPANY.
(430 SE2d 75)

BIRDSONG, Presiding Judge.

Appellant Joseph G. Rice d/b/a Curtis Mathes and Rice Home Electronics Corporation (Rice) appeals from the judgment entered and the order of the trial court denying his motion for new trial and reformation of verdict.

This case involves an action brought by Rice for recovery under a business policy of insurance issued to him by appellee State Farm Fire & Casualty Company (State Farm). In September 1988, appellant reported that his business had been burglarized. The inventory in the store was floor-plan financed by ITT Commercial Credit (ITT) which, at the time of the burglary, had an interest in the missing merchandise of $25,184.11. Mr. Rice filed a "Sworn Statement in Proof of Loss" with State Farm, claiming a loss of merchandise of approximately $30,500 in value. ITT was a loss payee under the policy.

Apparently ITT filed a separate suit, pursuant to the terms of its floor plan security agreement, as a creditor of appellant to obtain compensation as to certain inventory missing and not paid for by appellant. The ITT suit was settled by execution of a settlement agreement and mutual release. This agreement and release pertinently provided that ITT and the Curtis Mathes Corporation (appellant's franchisor) fully relinquished any and all claims to any future insur-

ance proceeds payable to appellant or his business from State Farm. The agreement and release also contained a broad release provision by ITT to "fully release . . . and forever discharge [appellant and others], of and from all, and all manner of, action or actions, cause or causes of action, suits . . . damages, claims, contests and demands of whatsoever kind of character, in law or equity, whether known or unknown, which exists or may exist on the date hereof for, upon or reason of any agreement, document, writing, instrument . . . act, omission or thing or cause whatsoever."

The trial court subsequently granted partial directed verdict for State Farm, ruling that appellant could not recover for the amount owed to ITT at the time of the loss. The trial court also removed from consideration of the jury the issue of bad faith and attorney fees pursuant to OCGA § 33-4-6. However, the trial court sent appellant's entire claim (other than bad faith and attorney fees) to the jury. The jury returned a verdict in favor of appellant for $26,592.70; pursuant to its earlier ruling, the trial court deducted $25,184.11 (the established amount of ITT's security interest in the missing inventory) from the verdict, and entered judgment for appellant in the sum of $1,408.59. *Held*:

1. Appellant asserts the trial court improperly withdrew the issue of bad faith and attorney fees (OCGA § 33-4-6) from consideration of the jury by granting partial directed verdict to appellee as to this issue.

There exists substantial, unrefuted evidence in this case that there was no visible sign of pry marks or breaking and entering into the doors of either appellant's business or into the adjacent premises being used by a construction company. The adjacent premises were separated from appellant's business by only a fire wall. Further, there was evidence the sheetrock section that was found removed from between the two premises, at a height of at least eight feet from the floor, had a single pry mark on appellant's side. There were no scuff marks or dirt marks found on either the construction company's or appellant's side of the common wall, which would indicate that someone had slid down the wall. Neither was any of the dust disturbed on the tops of the refrigerator or the boxes located in proximity to where the sheetrock had been removed. The location of the only pry mark found made it appear that the sheetrock had been removed from appellant's side of the wall. The piece of sheetrock that was removed was the only one that could have been removed without bumping into some object located against appellant's side of the wall. Moreover, although it had rained very hard the night before, no muddy footprints were found in either appellant's or in the construction company's business areas. Further, although several lines were in the building, a single phone line had been cut or broken so as to disable the line from

the alarm (and Rice was a very competent and experienced electrician). It was "almost impossible to get into [appellant's business] from [the area where the sheetrock was removed] without [activating] that alarm system," as a person would have to cross the alarm path system to cut the phone wire. It was also observed that none of the remaining boxes appeared to have been checked for contents. In the opinion of a deputy sheriff, the sheetrock was taken down from appellant's side.

The auditor for ITT testified that Rice gave her a list of allegedly stolen items. She did a complete floor check audit of retail, rental, and lease items, and found some discrepancies in Rice's list. Of the approximate one hundred items, which Rice listed as stolen, five or six were found in stock and about nine items were found to have been rented out. At the time of the theft, Rice was in default on his principal payment to ITT by several months; he also owed back store rent.

Although requested by the police for serial numbers of the property determined to be stolen, Rice never provided that information to the policemen who were investigating the incident. State Farm did not receive the proof-of-loss form until March 15, 1989, although the alleged break-in occurred on September 10 or 11, 1988.

A member of State Farm's senior referral unit for suspicious claims testified he also observed no pry marks, footprints or scuff marks on the construction company side of the wall, and found no sign of forced entry on doors. Rice declined to sign a consent form for release of certain information, such as phone call records, bank records, and various business records. State Farm never supplied the police with any serial numbers because they never got a confirmed list from Rice verifying which items by model number and serial number had been stolen. The senior referral unit member also made a request of both Rice and an independent contractor hired by Rice for a list of all former and current employees, but he never was given this information.

Evidence was also admitted without objection, pertaining to Rice's past claims history. Previously, Rice had taken his station wagon to a local service center to have tires installed; he was told tire installation would take a couple hours; while waiting, he was observed by a vending machine located directly in front of the center's alarm box; the alarm box was subsequently found to have been moved out of position; after an hour passed, Rice departed without waiting for his car; he was informed later that his car was ready, but he did not return that day to pick it up; that night the service center was broken into, Rice's car keys were obtained from inside the premises, and only his car, which was parked outside, was stolen; a switch on the alarm subsequently was found to have been moved so that the phone-alarm system was deactivated; Rice's vehicle was found the next day in Ala-

bama, but it was stolen again a week or two weeks later and never recovered.

Rice and Townsend (the independent contractor working for Rice) both testified and denied any complicity in the break-in of Rice's business. Rice in essence asserted that his inability to respond quicker to the demands for information was predicated in large measure on the seizure of his office computer and paperwork by ITT.

After Rice filed suit, State Farm denied Rice's claim on the basis that "no burglary actually ever occurred and that Mr. Rice had concealed and misrepresented material facts to [State Farm] in the course of [the insurance company's] investigation." From the inception of the claim, the evidence was in conflict whether a break-in and burglary occurred as reported by Rice, and whether Rice concealed or misrepresented material facts to State Farm.

Appellant's reliance on *Gary v. State*, 262 Ga. 573 (422 SE2d 426) is misplaced. *Gary* is distinguishable and not controlling as to our disposition of this error as enumerated.

The trial court granted partial directed verdict to State Farm on the issue of bad faith and attorney fees relying on *Massachusetts Bay Ins. Co. v. Hall*, 196 Ga. App. 349 (395 SE2d 851). " 'To support a cause of action under OCGA § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith. (Cits.) "A defen(s)e going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the company as effectually as would a complete defense to the action." (Cits.) "Penalties for bad faith [and attorney fees] are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." (Cit.)' " Id. at 355 (3). This type of directed verdict case is somewhat of an anomaly. Normally the standard for directed verdict and judgment n.o.v. are the same: "[w]here there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." *Pendley v. Pendley*, 251 Ga. 30 (302 SE2d 554). However, it is the very fact that certain factual issues regarding the merits of a claim are in genuine conflict that causes there to be no conflict, as a matter of law, whether an insurance company had reasonable grounds to contest a particular claim. In reaching this determination a court should carefully scrutinize any claim of a contest in facts to preclude the reliance by an insurance company on fanciful allegations of factual conflict to delay or avoid legitimate claims payment. Carefully scrutinizing the evidence of record, we find that, as a matter of law, State Farm had *reasonable grounds* to contest Rice's claim. Thus, the evidence demands a verdict, under the precedent of *Massachusetts Bay*, supra, that State Farm could not be held liable, under OCGA

§ 33-4-6, either for the imposition of bad faith penalties or for attorney fees. Accordingly, the trial court did not err in granting partial summary judgment to State Farm as to these matters. Id.

2. Appellant asserts the trial court erred by failing to enter judgment in favor of appellant for that portion of the verdict which was owed to ITT as loss payee under the terms of the policy in question at the time of the loss.

ITT is not a party in this suit. Appellant's assertion that the ITT settlement and release agreement included an assignment to him of the rights of ITT against State Farm is without merit. The document is clear and unambiguous, and does not contain any assignment of rights to appellant. Where, as here, the terms of a contract are clear, unambiguous, and capable of but one reasonable interpretation, the court will look to the contract alone to find the intent of the parties; in such instances, no construction is necessary or even permissible. *Howell Mill/Collier Assoc. v. Pennypacker's,* 194 Ga. App. 169, 173 (3) (390 SE2d 257); *Stern's Gallery &c. v. Corporate Property &c.,* 176 Ga. App. 586, 593 (337 SE2d 29). Moreover, the insurance policy provides that an assignment of interest thereunder would not bind State Farm until its consent thereto is endorsed on the policy; the policy contains no such endorsement.

The trial court concluded that appellant's insurable interest in the missing inventory was limited to the difference between ITT's insurable interest as loss payee and the market value of the property at the time it was stolen. The court further concluded that appellant could not assert the rights of ITT in the absence of a valid assignment of those rights to appellant.

The record establishes that ITT relinquished its right to pursue its claims for the indebtedness against appellant without relinquishing its security interest in the missing property simply by releasing appellant from certain liability, including liability for any obligation to pay the amount due and owing ITT, at the time of the release, under the floor-plan financing agreement. The issue then becomes whether appellant had an insurable interest in the allegedly missing inventory, which would authorize his recovery of an amount equal to ITT's insurable interest as loss payee under the policy, in addition to appellant's actual loss, when ITT had not assigned to appellant its rights as loss payee.

This issue presents a case of first impression for this court. In this case, the policy contained two loss payable endorsements naming as loss payee ITT and Curtis Mathes Corporation, respectively. These endorsements expressly provided that a "loss, if any, under this policy shall be payable to the above named loss payee as lender, mortgagee, or trustee, as interest may appear." (ITT's interest at time of theft was $25,184.11.) Although not directly in point, the case of *Simmons*

*v. American Security Ins. Co.*, 107 Ga. App. 364 (130 SE2d 351) is enlightening. In *Simmons*, where, by the terms of the motor vehicle insurance contract, the loss payable was to the named insured and a named mortgage loan company " 'as interest may appear,' " this court held that an "insured may not, over timely special demurrer, sue in his own name to recover the [entire] loss to the exclusion of the mortgagee." Id. at 364-365. Likewise informative is *Georgia Cas. &c. Co. v. Pincus*, 89 Ga. App. 836 (1) (81 SE2d 527) wherein it was held: "The policy by its very terms is made payable to two legal entities, the insured and the named bank, as interest may appear. The defendant insurer would not be released, under the terms of the policy, by a payment to one from his obligation to the other. The contract of insurance is simply an obligation to the insured and the named bank as interest may appear; and, until that is ascertained, the defendant would not be acquitted if he paid the insured the total liability limited in the policy. Nor would a judgment ascertaining the amount due the insured be a bar upon the bank, unless it is made a party with an opportunity to contest the amount of its interest."

As above determined, ITT's interest as loss payee under the policy was not extinguished by its settlement agreement with and release of appellant, nor did it thereby assign its interest as loss payee to appellant. We are satisfied that the right of an insured to insurance proceeds, claimed pursuant to an insurance contract containing a loss payee endorsement "as interest may appear," is determined at the time of loss and to the extent of the insured's established actual loss. Cf. *Ga. Farm &c. Co. v. Brewer*, 202 Ga. App. 127, 128 (413 SE2d 770). Consistent with these principles, the trial court properly protected the loss payee's legal interest by reducing the jury verdict to the extent of ITT's established interest of $25,184.11. Moreover, the trial court's entry of judgment was consistent with the general legal policy in this state prohibiting windfall and double recovery. Cf. OCGA § 9-2-4; *Ga. Farm*, supra at 129 (once satisfaction is received, no entitlement exists to additional recovery by mortgagee).

Appellant has cited, in addition to certain Georgia precedent, certain decisions from courts of other states. The decisions of other state courts, like the opinions of legal scholars, constitute only secondary authority before this court; these decisions are mere opinions, which are not binding upon us, and will be followed only in the event this court considers them sound and compatible with the orderly and fair development of the law of this state. See *Thompson v. Eastern Air Lines*, 200 Ga. 216, 222 (39 SE2d 225). Moreover for reasons above discussed, we find the position advanced by appellee more persuasive in arriving at our disposition of this matter.

3. Appellant, relying upon the statutory provisions of OCGA § 7-4-15, asserts the trial court erred by failing to include prejudgment

interest in its judgment.

OCGA § 7-4-15 pertinently provides: "All liquidated demands, where by agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them; if payable on demand, they shall bear interest from the time of the demand."

In support of this enumeration, appellant argues that the damages in issue became liquidated when appellant made his demand for payment upon submitting his claim by letter of May 18, 1989. This letter pertinently states: "This letter represents a formal demand for payment on the above referenced claim [Claim No. 11-G009-464]. [Appellant] had completed and mailed to your office the appropriate 'Sworn Statement in Proof of Loss' regarding the loss by theft which occurred in September 1988 and has yet to receive payment according to the terms of the policy." However, the "Sworn Statement in Proof of Loss," pertaining to Claim No. 11-G009-464, reflects that "the interest of the insured in the described property was -0- Unk," and that the "insured hereby claims of this company . . . under this policy the sum of $30,500.00 approx." It is clear that contrary to appellant's contention, the demand letter of May 18, 1989, on its face did not demand liquidated damages in a fixed or certain amount. Rather, the "Sworn Statement in Proof of Loss" incorporated by reference into the demand letter made claim merely to an approximate amount. "A sum is liquidated when it is certain how much is due and when it is due." *Turner Constr. Co. v. Electrical Distrib.*, 202 Ga. App. 726, 727 (3) (415 SE2d 325). The sum demanded in the letter relied upon by appellant in its brief was not liquidated within the meaning of OCGA § 7-4-15. Appellant cites this court to no other document which contains a demand for a fixed or certain sum; it is not the function of an appellate court to cull the record in search of error on behalf of a party. *Manderson & Assoc. v. Gore*, 193 Ga. App. 723, 733 (8) (389 SE2d 251). Moreover, as appellant does not cite any authority or make any argument in its appellate brief that a liquidated demand was made, under OCGA § 7-4-15, in any manner other than by letter of May 18, 1992, the issue of whether the demand was made in any other manner has been abandoned. Court of Appeals Rule 15 (c) (2).

Additionally, the record establishes that a bona fide dispute existed as to the amount, if any, of the principal indebtedness. Although appellant asserted a missing property loss of $30,500, the jury rendered a verdict in the amount of only $26,592.70. The trial court properly reduced that amount on judgment to $1,408.59 in favor of appellant. An amount is unliquidated where, as here, there is a bona fide dispute as to principal indebtedness. *Federal Ins. Co. v. Nat. Distrib. Co.*, 203 Ga. App. 763, 769 (4) (417 SE2d 671). In this instance the amount of the claim was vigorously contested throughout trial,

and the amount of claim due and payable remained unliquidated until judgment was entered properly subtracting a monetary amount equal to ITT's interest from the verdict. Compare *Enfinger v. Intl. Indem. Co.*, 257 Ga. 385 (359 SE2d 884) with *Intl. Indem. Co. v. Terrell*, 178 Ga. App. 570 (344 SE2d 239); cf. *Restina v. Crawford*, 205 Ga. App. 887 (424 SE2d 79) (interest awarded per Unliquidated Damage Interest Act, OCGA § 51-12-14); *Home Ins. Co. v. North River Ins. Co.*, 192 Ga. App. 551, 557 (4) (385 SE2d 736) (where amount of damages can only be established by the trier of fact, the damage award is unliquidated).

The issue of prejudgment interest, pursuant to OCGA § 13-6-13, where contract damages are unliquidated is not before this court for adjudication in this appeal.

*Judgment affirmed. Beasley and Andrews, JJ., concur.*

DECIDED MARCH 9, 1993 —
RECONSIDERATION DENIED MARCH 24, 1993

*Rafe Banks III*, for appellant.
*Greer, Klosik & Daugherty, Frank J. Klosik, Jr., Donald J. Sharp*, for appellee.