## A93A0174. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. SEEBA et al.
### (433 SE2d 414)

SMITH, Judge.

This declaratory judgment action arises out of a vehicular collision between an automobile driven by Kathryn Seeba and a Ford truck and trailer operated by Paul Wilson. The truck was owned by Metro Ambulance and leased to Edgar Pounds, its employee, who was also the sole owner of the trailer. Seeba was killed in the collision, and her husband filed a wrongful death action. Wilson sought insurance coverage and a defense from State Farm Mutual Automobile Insurance Company, which had issued to Pounds a policy covering the truck. State Farm defended the action under a reservation of rights and filed this action against all parties in the wrongful death lawsuit, contending Wilson was excluded from coverage because he was engaged in a "car business" within the meaning of a policy exclusion. Seeba and State Farm filed cross-motions for summary judgment on the coverage issue, and the trial court granted Seeba's motion and denied that of State Farm. After entry of final judgment, State Farm filed this appeal.

The record reveals that a few weeks before the collision, Pounds had decided to sell the tractor and a horse trailer. He parked the tractor and trailer on the lot of Franklin Ford Tractor, Inc., a Cartersville business that sold and serviced tractors and other farm equipment. He and Russell Franklin, the proprietor, agreed that Franklin would market the vehicles and would keep as commission any proceeds above a minimum price set by Pounds. After several weeks, Franklin decided the tractor and trailer would get better exposure in Alpharetta. He contacted Wilson to ask his assistance in finding a suitable display location and they arranged to park the vehicles at a horse farm. Pounds consented to the arrangement whereby the vehicles would be displayed in Alpharetta and Wilson, an experienced driver, would drive the tractor and attached trailer to the intended location. The collision at issue occurred during Wilson's drive from Cartersville to Alpharetta.

Under the terms of the liability policy at issue, Wilson was an "insured" because he was driving the truck with Pounds' express permission. The policy also provides, however, that there is no coverage

while an insured vehicle is "being repaired, serviced or used by any person employed or engaged in any way in a car business." "Car business" is defined in the policy as "a business or job where the purpose is to sell, lease, repair, service, transport, store or park" motor vehicles.

Wilson testified by deposition that he was the proprietor of Randy Wilson Quarter Horses, Inc., a business engaged in training, showing, and selling horses. He testified that he and Franklin had agreed they would split any commission received by Franklin from the sale of Pounds' tractor, and that they had engaged in similar transactions on the average of one a year for the last ten years. Appellant contends that because of the arrangement between Wilson and Franklin, especially in view of their history of similar transactions, Wilson was engaged in a "car business" at the time of the collision because he was transporting the tractor and trailer in furtherance of their common purpose of selling vehicles. Appellee maintains Wilson was not engaged in the car business, because his participation in the sale of the tractor was a sideline and not his primary occupation.

An ambiguity exists in the policy regarding the meaning of the phrase "engaged in any way in a car business." It was proper for the trial court to construe it, *Hirschfield v. Continental Cas. Co.*, 199 Ga. App. 654, 655 (405 SE2d 737) (1991), and to resolve it by construing it against the insurer. See *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 615 (299 SE2d 561) (1983). This is particularly true when the ambiguity is contained in an exclusion, since the insurer, "having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." (Citations and punctuation omitted.) *U. S. Fidelity &c. Co. v. Gillis*, 164 Ga. App. 278, 281 (296 SE2d 253) (1982).

In considering a similar insurance policy exclusion, this court has held that in the absence of any indication to the contrary in the policy, the term "business" as used in the exclusionary clause means " 'business in the ordinary accepted sense — that is[,] an undertaking engaged in with some regularity and for profit and income.' [Cit.] '[O]rdinarily the word "business" is that which occupies the time, attention, and labor of [a person] for the purpose of a livelihood or profit.' [Cit.] Black's Law Dictionary further defines *occupation* as that 'which principally takes up one's time, thought, and energies; especially, one's regular business or employment; also whatever one follows as the means of making a livelihood. . . .' 'This conforms to the general rule of law that the words "engage in business" imply an element of continuity or habitual practice. . . [. T]he doing of a single act pertaining to a particular business is not ordinarily the equivalent of engaging in or carrying on a business. [Cits.]' [Cit.]" *State Farm Fire &c. Co. v. Thigpen*, 131 Ga. App. 608, 610-611 (206 SE2d 839)

(1974). This definition is consistent with the principle directing construction of the policy against the insurer as well as with the interpretation given to the term "business" in other contexts. See *Southern Guaranty Ins. Co. v. Duncan*, 131 Ga. App. 761, 763-764 (2) (206 SE2d 672) (1974) ("business pursuits" exclusion in homeowners' insurance policy applies to one's primary or regular occupation, not to an activity engaged in during one's spare time); *Novak v. Redwine*, 89 Ga. App. 755, 758 (81 SE2d 222) (1954) (the term "engage in business" in retail sales tax statute means activity that habitually occupies time, attention, and labor of persons for purpose of livelihood or profit).

Like the exclusion at issue in *Cincinnati Ins. Co. v. Perimeter Tractor &c. Repair*, 192 Ga. App. 243 (384 SE2d 449) (1989), the exclusion here " 'focuses on the person in whose charge the vehicle is at collision-time. (Cits.)' [Cit.]" Id. at 244 (1). It is undisputed that the primary business of Wilson — that is, the activity that engages his time, attention, and labor for the purpose of livelihood or profit — is the training, showing, and selling of horses. Although he had on occasion participated with Franklin in the sale of motor vehicles, that was not his primary livelihood or occupation. Consequently, following the reasoning in *State Farm v. Thigpen*, supra, Wilson was not engaged in the "car business" because that was a secondary activity or hobby, not his business or livelihood. Compare *Smith v. State Farm Mut. Auto. Ins. Co.*, 193 Ga. App. 347 (387 SE2d 623) (1989) (part owner of car wash business was deemed to be engaged in car business while in the act of returning a customer's car to her home). Even assuming, without deciding, that Wilson was a partner or joint venturer with Franklin, who is in the car business, the focus remains on Wilson, *Cincinnati Ins. Co.*, supra, and that partnership or joint venture is not Wilson's primary occupation or business.

Under these circumstances, the trial court correctly denied appellant's motion for summary judgment and granted that of appellee. See *State Farm v. Thigpen*, supra at 611.

*Judgment affirmed. Johnson and Blackburn, JJ., concur.*

DECIDED JULY 6, 1993.

*Greer, Klosik & Daugherty, Jeffrey F. Leasendale*, for appellant.
*Cauthorn & Phillips, Thomas E. Cauthorn III, John C. Page, Moore & Moore, W. Newton Moore, Elisa A. R. Roberts*, for appellees.