A96A1626. STATE FARM FIRE & CASUALTY COMPANY
v. AMERICAN HARDWARE MUTUAL INSURANCE COMPANY.
A96A1779. FRANKLIN et al. v. STATE FARM FIRE & CASUALTY
COMPANY.
(482 SE2d 714)

BIRDSONG, Presiding Judge.

In Case No. A96A1626, appellant/plaintiff State Farm Fire & Casualty Company (State Farm) appeals from the order of the superior court granting appellee/defendant American Hardware Mutual Insurance Company's (AHM) motion for summary judgment on the issue whether Paul Wilson was an insured under either insurance policy issued by AHM. In Case No. A96A1779, appellants/defendants John Russell Franklin (Franklin), Tractors Inc. d/b/a Franklin Ford Tractor, and AHM appeal from the order of the superior court granting summary judgment to appellee/plaintiff State Farm on the issue whether State Farm had a duty to indemnify Franklin and Franklin Ford Tractor; the trial court held any claim for indemnification is barred by the doctrine of res judicata. Certain collateral issues arising from this incident are addressed in *State Farm Mut. &c. Ins. Co. v. Seeba*, 209 Ga. App. 328 (433 SE2d 414).

These appeals arise from a suit for declaratory judgment brought by State Farm to determine whether AHM's commercial garage insurance policy affords primary coverage and a duty to indemnify Franklin, Franklin Ford Tractor or Paul Wilson regarding wrongful death action claims arising out of a motor vehicle incident. State Farm also sought a declaration that AHM's commercial umbrella policy and State Farm's personal liability umbrella afforded excess coverage on a pro rata basis. AHM and Franklin Ford Tractor

expanded this action by filing a cross-claim and third-party complaint for indemnification against Paul Wilson and State Farm. State Farm, Hartford Fire, and AHM entered into a non-waiver and reservation of rights agreement agreeing inter alia to reserve all questions regarding whether any insurer's policy applies or affords coverage to any claims arising out of the motor vehicle collision and the underlying tort action, including questions of who an insured is and which policies provide primary or excess coverage or the stacking order of the respective policies.

At the time of the motor vehicle collision, Paul Wilson was driving a tractor-truck and pulling a horse trailer for purposes of exhibiting the trailer for sale in Alpharetta, Georgia. The complaint avers that Wilson negligently operated the motor vehicle causing a head-on collision resulting in the death of Katherine Marie Seeba. The trailer was owned by Edgar Pounds; the truck was owned by Metro Ambulance Services, Inc. and leased to Pounds who was Metro's president. More than two weeks before the collision, Pounds had the truck and trailer delivered to Franklin's business premises so the latter could transport and display the trailer in an effort to sell it. Pounds told Franklin that he would also sell the truck if necessary to facilitate the trailer sale. Franklin called Pounds and acknowledged when the truck and trailer arrived on his premises. Franklin had agreed to sell the trailer for Pounds who had been a good customer and had purchased the trailer from Franklin Ford Tractor. Franklin realized he might not make any money from the sale; however, he hoped to make a profit by selling the trailer for more than the sale price set by Pounds. Franklin subsequently contacted Paul Wilson, who previously had sold trailers on a commission basis for Franklin, and asked him to find a place in Alpharetta to show the trailer. Wilson was to share 50/50 in any money made from the sale in excess of Pounds' established sale price. Wilson found a place to show the trailer. The truck and trailer apparently were released to his custody by Franklin, after approval was obtained from Pounds, so that Wilson could haul the trailer to Alpharetta. The truck and trailer had been on Franklin's business premises for approximately two weeks before being driven away by Wilson, and Franklin had talked at least to one inquirer about it. Before Wilson departed the premises, Franklin instructed him not to leave the truck keys with anyone as Franklin did not want any unauthorized person driving it; however, Wilson was going to leave the trailer key at Alpharetta so potential customers could examine the trailer. (A factfinder could reasonably infer that the keys to both the trailer and truck had been left by Pounds' driver either with Franklin or with Franklin Ford Tractor.) Franklin and Wilson conducted a joint safety inspection of the truck and trailer before Wilson left the premises. At the time of the collision,

Pounds had in force a personal liability umbrella policy with State Farm insuring both himself and Metro Ambulance Service, Inc. Franklin and Franklin Ford Tractor were named insureds under a commercial lines policy and a commercial umbrella policy, both issued by AHM. Paul Wilson was insured by the Hartford Fire Insurance Company (Hartford Fire) under a personal automobile policy issued to him and his wife.

State Farm moved for summary judgment as to the issues of who an insured is, which policies provide primary or excess coverage, and the stacking order of the respective policies. AHM, Franklin and Franklin Ford Tractor moved for summary judgment as to the issue inter alia whether State Farm on behalf of its insured, Wilson, had a duty to indemnify them for all sums paid on their behalf to settle the underlying wrongful death action. *Held*:

### Case Nos. A96A1626 and A96A1779

1. " 'To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.' " *Mull v. Mickey's Lumber &c. Co.*, 218 Ga. App. 343, 344 (1) (461 SE2d 270). "In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion." *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843).

### Case No. A96A1626

2. "An insurance policy is governed by the ordinary rules of contract construction. [Cit.] The hallmark of contract construction is to ascertain the intention of the parties. [Cits.] However, when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent." *Park 'N Go &c. v. United States Fidelity &c. Co.*, 266 Ga. 787, 791 (471 SE2d 500). Generally it is the duty of the court to construe the terms of a contract applying the three-step process discussed in *Duffett v. E & W Properties*, 208 Ga. App. 484, 486 (2) (430 SE2d 858); a jury question arises (as to contract construction) only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction. Id.

3. AHM issued both a commercial lines policy and a commercial umbrella policy to its named insureds, Franklin and Franklin Ford Tractor. Under the commercial lines policy, with certain exceptions

not here applicable, anyone else also is an "insured" who is using, with the "permission" of said named insureds, "a covered auto" which the named insureds "own, hire or borrow." The terms of the commercial umbrella policy include a substantially similar definition of an additional insured. The pivotal issue in this case, as relates to each policy, is whether the tractor-truck was a vehicle which the named insureds did "borrow" and whether the use thereof was with the named insureds' "permission." The parties rely upon several cases from other jurisdictions; the decisions of other jurisdictions are not binding on this Court and will be followed only when they are determined to be consistent with the orderly and fair development of the law of this state. *Rice v. State Farm Fire &c. Co.*, 208 Ga. App. 166, 171 (2) (430 SE2d 75). Examination of the relevant common terms of the two AHM policies establishes that only if the named insureds, Franklin and Franklin Ford Tractor, borrowed the trailer-truck from Pounds and gave permission to Wilson to use it would Wilson be deemed an "insured."

(a) The parties have proposed differing definitions of the word "borrow," for our appellate consideration in interpreting the AHM policies at issue. We decline to adopt either party's proposed definition of this word. In the AHM policies, the word "borrow" is not used as a technical word, word of art or with a unique or peculiar meaning such as may be employed in a particular trade or business. In the interpretation of contracts, "[w]ords generally bear their usual and common signification." OCGA § 13-2-2 (2). The most authoritative, primary common signification of the word "borrow" is "to receive temporarily from another, implying or expressing the intention either of returning the thing received or of giving its equivalent to the lender." Webster's Third New International Dictionary (unabridged). This definition controls in the interpretation of these two AHM policies. (No element of this common signification requires, as asserted by appellee, that in order for the tractor-trailer to be borrowed by Franklin or Franklin Ford Tractor it must have been received and utilized by them solely for their own use; we decline to revise these policies by adding such an additional restrictive requirement. See generally *Stuckey v. Kahn*, 140 Ga. App. 602, 606 (1) (231 SE2d 565)). The common signification of the word "receive" is "to take possession or delivery of." Webster's Third New International Dictionary (unabridged). Therefore, in order to "receive" the tractor-trailer, Franklin or Franklin Ford Tractor must also, at some point before it was released to Wilson, have obtained possession of or otherwise have accepted delivery of the vehicle.

(b) Examination of the deposition testimony of Pounds, Franklin, and Wilson in accordance with the standards in Divisions 1 and 2 above reveals that genuine issues of material fact exist whether

Franklin was a "borrower" of the truck, as that term is defined in Division 3 (a). Jury issues exist whether Franklin either obtained possession or otherwise accepted delivery of the truck before it was released to Wilson's control; a jury issue also exists whether Franklin ultimately was to return either the vehicle or its equivalent to Pounds. Pounds testified that he was willing to sell the truck, if necessary to facilitate the sale of the tractor, and that he had informed Franklin of that fact. Franklin testified that Pounds had set a sale price on the truck. Under such circumstances, a jury could conclude the return of the stated sales price would constitute the return of equivalent property within the meaning of the term "borrow." Jury issues also exist as to whether Pounds merely permitted and vested Franklin (with whom he was dealing) with discretion to give Wilson (whom Pounds had never met) permission to use the truck; whether Pounds gave Wilson the permission merely using Franklin to transmit such permission; or, whether Pounds and Franklin jointly gave Wilson the permission. It is the jury's function to draw an inference from the evidence when more than one inference can be drawn. *Thompson v. Crownover*, 259 Ga. 126 (6) (381 SE2d 283). The trial court erred in granting appellee AHM's motion for summary judgment on the issue whether Wilson was an insured under the AHM policies.

*Case No. A96A1779*

4. Appellants Franklin, Franklin Ford Tractor and AHM assert inter alia that the trial court erred in granting summary judgment to appellee State Farm regarding certain claims for indemnification.

(a) The trial court's order stated that it granted State Farm's motion for summary judgment "on the issue of whether [State Farm] has a duty to indemnify defendants Russell Franklin and Franklin Ford Tractor. The [trial] court finds that any claim for indemnification is barred by the doctrine of res judicata." State Farm argues that res judicata precludes consideration of indemnification claims because the underlying tort litigation was dismissed with prejudice by the plaintiff upon settlement.

However, in *Marchman & Sons, Inc. v. Nelson*, 251 Ga. 475, 478 (306 SE2d 290), the Georgia Supreme Court held that "the dismissal with prejudice of the underlying suit is not a bar to an action for contribution by one joint tortfeasor against another joint tortfeasor." In that case, the plaintiff sued ten defendants. After negotiating a settlement with seven of the defendants, the plaintiff dismissed the suit with prejudice. Two of the defendants who had participated in the settlement subsequently brought a contribution action against two

defendants who had not participated in the settlement. In holding that the dismissal with prejudice was not a bar to the contribution action, the court noted: "Our statute [OCGA § 51-12-32] recognizes the continuing existence of the right of contribution against a joint tortfeasor who has been released. It recognizes the existence of the right of contribution where there is no judgment at all in the underlying suit, and even where there is no underlying suit filed. Thus, the right of contribution arises out of, but exists separately from, the rights present in the underlying suit." (Footnote omitted.) Id. at 477-478. (The principles set forth in *Marchman* are equally applicable to claims of indemnity. OCGA § 51-12-32, relied upon by the Supreme Court as the basis for its holding, deals with both contribution and indemnity claims.) See also *Nat. Foundation Co. v. Post, Buckley, &c.*, 219 Ga. App. 431, 432 (1) (465 SE2d 726).

The fact that none of the defendants in the underlying tort suit filed cross-claims against each other for indemnity also does not operate to preclude the filing of such claims after dismissal of the tort action. See *Johnson &c. Constr. Co. v. Bing*, 220 Ga. App. 179, 180 (1) (469 SE2d 697) ("[i]t is therefore not requisite to a joint tortfeasor's right of contribution that he file cross-claims against another joint tortfeasor in an underlying suit"). Accordingly, the trial court erred in finding that any indemnification claims were barred by res judicata.

(b) Nevertheless, since a summary judgment right for any reason will be affirmed, we must review the record to determine if State Farm was otherwise entitled to partial summary judgment.

The trial court held that State Farm has no duty to indemnify Franklin or Franklin Ford Tractor. However, neither Franklin nor Franklin Ford Tractor asserted an indemnification claim directly against State Farm. Therefore, it is unclear on what issues the court is granting summary judgment to State Farm.

Franklin, Franklin Ford Tractor, and AHM have raised two potential claims in this case which might be classified as indemnification claims. First, if the driver of the truck, Paul Wilson, is not covered under AHM's policies, and AHM's named insureds, Franklin and Franklin Ford Tractor, are not liable for Wilson's acts under an agency or respondeat superior theory, then AHM contends it would not be liable for any damages arising out of the subject accident. As AHM has already paid $100,000 toward the settlement of the underlying tort suit, it contends it would be entitled to indemnification from State Farm for that amount, since State Farm would be the only liable insurer which has not paid its policy limits. Regardless whether this claim is properly termed an indemnification claim, it is clear that AHM's ability to assert such claim against State Farm was preserved by the reservation of rights agreement entered into by the

insurers when they agreed to fund the settlement before all coverage issues had been resolved.

The trial court's order granting partial summary judgment to State Farm does not address any claim by AHM for indemnification. However, since any money paid by AHM toward the settlement was paid on behalf of its insureds, Franklin and Franklin Ford Tractor, the court's order could arguably be read as granting summary judgment to State Farm on any indemnification claim by AHM for such amounts. In the event that the court intended to preclude such claim, it erred, as there clearly exist factual questions regarding this claim.

Second, Franklin and Franklin Ford Tractor contend that if they are determined to be liable for Wilson's acts under a respondeat superior or agency theory, they would be entitled to indemnification from Wilson for any amounts paid on their behalf to fund the settlement, since they would be considered passive tortfeasors and Wilson was an active tortfeasor. See *Colt Indus. Operating Corp. v. Coleman*, 246 Ga. 559, 560 (272 SE2d 251).

The trial court found that State Farm had no duty to indemnify Franklin and Franklin Ford Tractor. While Franklin and Franklin Ford Tractor have not asserted an indemnification claim directly against State Farm, they have asserted such a claim against Wilson, for which State Farm could be liable as Wilson's insurer. State Farm takes the position that the trial court's order granted it summary judgment on any such claim. There exist genuine issues of material fact as to whether Franklin and Franklin Ford Tractor have a valid indemnification claim against Wilson. Accordingly, to the extent that the trial court may have intended to grant State Farm summary judgment on such claim, it erred.

Since the trial court's order is vague with respect to the issues on which it granted summary judgment to State Farm, justice mandates that the order be vacated. The judgment in Case No. A96A1779 is vacated and the case remanded for further clarification and proceeding consistent with our holding in this opinion.

*Judgment reversed in Case No. A96A1626; judgment vacated in Case No. A96A1779 and remanded with direction. Andrews, C. J., McMurray, P. J., Pope, P. J., Johnson, Blackburn, Smith and Ruffin, JJ., concur. Beasley, J., concurs in part and dissents in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

I respectfully concur in Divisions 1, 2, and 3 and dissent as to Division 4.

1. Before addressing Division 4, it is necessary to explain my concurrence in Division 3, which addresses the meaning of "borrow" in the AHM policies. The many definitions given the word "borrow" in Webster's Third New International Dictionary (unabridged) in

almost all instances connote that the transfer of possession is primarily for the use and benefit of the borrower. Even definition number 1, part of which is used in the instant opinion, includes: "obtain the temporary use of <he returned the pen that he had borrowed from her>: specif: to receive . . . from a lending library for temporary use outside the library premises. . . ."

In the New York case of *Broome County Co-operative Fire Ins. Co. v. Aetna Life &c. Co.*, 347 NYS2d 778, 784 (N.Y. Sup. Ct. 1973), quoting an earlier New York case, a New York Supreme Court thought of "borrow" as connoting that the transfer of possession was for the use and benefit of the receiver. It also paraphrased the word in more general terms, in its own language, as being the "common everyday language." In *Broome*, the friend was deemed not a borrower of the auto as a matter of law because she was just driving the disabled woman to the friend's home in the disabled person's car so they could visit at the friend's home and then go together to an event. The auto was being "used primarily for [the disabled owner's] benefit" and therefore the driver-friend was not a "borrower" so as to be included in the Aetna policy. Here AHM's insureds had custody but not possession of the truck when the collision occurred; they had custody of it primarily for the benefit of the owner, Pounds. It is hard to say they "borrowed" it, but I can accept the reversal of summary judgment on this issue because, as even the New York court recognizes, the court will not supply words of limitation to an insurance contract where the insurers have not seen fit to do so. AHM did not say "borrow for own use" or words of similar import, but merely "borrow."

This broad meaning might, then, also include bailments, such as when an auto is delivered to a parking attendant or garage mechanic, because the purpose of the temporary possession is regarded as irrelevant.

The Texas Supreme Court, in the 1977 case of *Liberty Mut. Ins. Co. v. American Employers Ins. Co.*, 556 SW2d 242, 244 (Tx. 1977), also includes the purpose of the acquisition of temporary possession in its definition of "borrow," thus giving the word a narrower meaning than the opinion in the instant case does. No authority is given, however, not even a dictionary; it apparently relies on what it regards as common use.

A 1984 Fifth Circuit case, *Sturgeon v. Strachan Shipping Co.*, 731 F2d 255 (5th Cir. 1984), requires "use" and "possession" for the vehicle to be "borrowed." AHM's insureds had "dominion and control" of the truck at the time of the collision in the sense that they had custody of the truck from the owner, although they did not have physical possession at the time. Driver Wilson did. The Fifth Circuit views "borrow" as the correlative of "loan." Under that view, it could be said that Pounds loaned the truck to Franklin for Pounds' purposes.

Nevertheless, I agree with the broad definition of "borrow" in this case. I do not agree, however, that there are jury issues with regard to Wilson's permission to use the truck. In the earlier appeal in this case, *State Farm Mut. &c. Ins. Co. v. Seeba*, 209 Ga. App. 328 (433 SE2d 414) (1993), we stated as an operative fact that Wilson "was driving the truck with Pounds' express permission." Id. at 328. This establishes the law of the case. *Jebco Ventures v. City of Smyrna*, 259 Ga. 599, 601-602 (1) (385 SE2d 397) (1989). Based on this and the record evidence, a jury could not find that Wilson was driving without Franklin's permission also, as it was Franklin who asked Wilson to take the truck and trailer and instructed him about the keys.

2. With respect to Division 4, I agree with the res judicata analyses, which lead to the conclusion that indemnification claims, whether the claim of Franklin, Franklin Tractor, Inc., or AHM, are not barred by the doctrine of res judicata. That being our ruling, there is no need to vacate the trial court's order regarding its second paragraph and remand the case for clarification.

In Division 4 (b), we have held that if the court addressed the AHM's indemnification claim, the trial court erred because fact issues exist as to whether Wilson was covered under AHM's policy. We have also held that if the court intended to address Franklin and Franklin Tractor's claims against Wilson and ultimately his insurer State Farm, it still erred as there are fact issues as to that, too. Because the trial court's two possible rulings are both declared wrong, a clearer explanation of the order is not needed and the ingredient for another possible interlocutory appeal should not be created. The judgment should simply be reversed and the trial proceed for resolution of the issues of fact.

DECIDED FEBRUARY 24, 1997.

*Swift, Currie, McGhee & Hiers, Jonathan M. Engram, Victor J. Faenza*, for State Farm Fire & Casualty Company.

*Austin & Sparks, John B. Austin*, for American Hardware Mutual Insurance Company and Russell Franklin et al.