A98A1706. NICHOLS v. WESTFIELD INSURANCE COMPANY.
(509 SE2d 149)

BLACKBURN, Judge.

Marsha Nichols, individually and as administratrix of the Estate of Harold C. Nichols (Estate), appeals the trial court's holding of noncoverage and grant of summary judgment in favor of Westfield Insurance Company in its declaratory judgment action. Nichols contends that an insurance policy issued to the McDuffie County Overseas Veterans Association (MCOVA) by Westfield covers the accidental death of her husband despite a dramshop liability exclusion contained therein. For the reasons set forth below, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

MCOVA is a fraternal, civic association chartered to "develop, encourage, promote and protect the interests of overseas veterans of McDuffie County; to promote recreational and social activities for overseas veterans of McDuffie County; and [to promote and sponsor] any other activities which are in the interest of overseas veterans of McDuffie County." In order to pay its expenses, MCOVA operates a bar and hosts social events such as dances. MCOVA donates income

not needed to cover its operating expenses to other charities.[1]

On the evening of February 10, 1995, Bradley Usry attended a dance sponsored by and held on the premises of MCOVA. At the dance, MCOVA sold Usry a number of alcoholic beverages. While driving home from the dance, Usry ran into and killed Harold C. Nichols.

At the time of the accident, MCOVA had a general commercial insurance policy in effect with Westfield. This policy of insurance excludes from its coverage bodily injury for "which any insured may be held liable by reason of: (1) [c]ausing or contributing to the intoxication of any person; (2) [t]he furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or (3) [a]ny statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages. *This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.*" (Emphasis supplied.)

On January 20, 1997, the decedent's wife, Marsha Nichols, filed suit against MCOVA for the death of her husband, asserting dramshop liability. On February 13, 1997, Westfield conveyed a reservation of rights letter to MCOVA. On June 12, 1997, Westfield filed a complaint for declaratory judgment that the insurance policy did not cover Harold Nichols' death because of the dramshop exclusion it contained. On December 15, 1997, Westfield filed a motion for summary judgment which was granted on March 6, 1998.

1. Nichols contends that the overall language of the dramshop exclusion is ambiguous and must be construed against Westfield. This Court has held that similar dramshop exclusions in other policies were neither ambiguous nor contrary to public policy. *Hartford Ins. Co. &c. v. Franklin*, 206 Ga. App. 193 (424 SE2d 803) (1992); *Safeco Ins. Co. of America v. Shawnee Mechanical Contractors*, 209 Ga. App. 165, 166 (433 SE2d 66) (1993).

2. Nichols next argues that the dramshop exclusion is ambiguous as specifically applied to MCOVA, arguing that MCOVA cannot be considered to be "in the business of" selling alcoholic beverages because: (a) MCOVA is a nonprofit organization; (b) the term "business" is ambiguous and must be construed against Westfield; and (c) a reasonable insured in MCOVA's position would not have considered the policy's "business" exclusions to be applicable to it.

(a) Nichols argues that MCOVA cannot be considered to be "in the business of" selling alcoholic beverages because it is a nonprofit organization and its net profits do not inure to the individual benefit

---

[1] Although MCOVA's purposes are fraternal, it has not qualified as a tax-exempt charity for federal income tax purposes.

of any of its members. Nichols maintains: (1) that the term "business" should be defined as "an activity regularly engaged in for profit, income, and livelihood" and (2) that an organization with nonprofit motives cannot be considered a business enterprise. In essence, Nichols contends that the analysis in cases such as this must narrowly focus on the profit motives of an organization rather than its activities. This argument is misplaced.

When asked to identify MCOVA's primary source of income, Gerald L. Drew, MCOVA's former chairman, answered "dances, the bar, different things like this." Drew also testified that MCOVA employed a bar manager and a bartender. Furthermore, MCOVA keeps an inventory of its liquor stock on a monthly basis. This evidence supports a finding that the sale of alcohol is one of the primary sources of income for MCOVA, regardless of whether it generates a profit that individually benefits its members. MCOVA sold alcohol to its patrons on a regular basis from a bar which it operated in order to support itself. As such, MCOVA must be considered to be in the business of selling alcohol, even using the definition propounded by Nichols, regardless of how the profits were used after the sale occurred.

Moreover, the provisions of Westfield's policy relate to the nature of risks resulting from the insured's *activities*, not from its fraternal *purposes*. The policy clearly states that Westfield is not obligated to cover bodily injuries associated with the business of selling alcoholic beverages without regard to the purpose for which such beverages are sold. Therefore, as the bar operated by MCOVA subjects Westfield to the same risks applicable to any other bar which regularly sells alcohol to the public, the policy exclusion regarding dramshop liability should be applicable to MCOVA. While the purposes of MCOVA and a local tavern differ, the risk excluded by the dramshop exclusion would be the same.

Furthermore, we point out that Georgia's dramshop law, itself, is drafted broadly enough to encompass fraternal organizations such as MCOVA. The Georgia dramshop act, OCGA § 51-1-40, generally refers to "a *person* who willfully, knowingly, and unlawfully sells, furnishes, or serves alcoholic beverages." (Emphasis supplied.) The statute does not draw artificial distinctions between nonprofit and for-profit purposes.

(b) Nichols further argues that the term "business," in and of itself, is ambiguous because MCOVA would interpret the term in a different way than Westfield would. Nichols chooses to stress a definition of "business" which requires the establishment of profit motives.

"The words used in policies of insurance, as in all other contracts, bear their usual and common significance, and policies of insurance are, as all other contracts, to be construed in their ordi-

nary meaning. . . . [C]ourts are not called upon, because of the rule that contracts of insurance are to be strictly construed against the insurer, and because the contract itself is one of insurance, to call forth doubt, through construction of plain and unambiguous provisions of such a contract." (Punctuation omitted.) *Nalley v. Nationwide Mut. Fire Ins. Co.*, 221 Ga. App. 537, 538 (2) (472 SE2d 82) (1996).

"In considering a similar insurance policy exclusion, this court has held that in the absence of any indication to the contrary in the policy, the term 'business' as used in the exclusionary clause means business in the ordinary accepted sense — that is, an undertaking engaged in with some regularity and for profit and income. Ordinarily the word 'business' is that which occupies the time, attention, and labor of a person for the purpose of a livelihood or profit. Black's Law Dictionary further defines *occupation* as that 'which principally takes up one's time, thought, and energies; especially, one's regular business or employment; also whatever one follows as the means of making a livelihood.' This conforms to the general rule of law that the words 'engage in business' imply an element of continuity or habitual practice." (Citations and punctuation omitted; emphasis in original.) *State Farm &c. Ins. Co. v. Seeba*, 209 Ga. App. 328, 329 (433 SE2d 414) (1993).

Here, it is clear that MCOVA sold alcohol on a regular basis to the public as a means of making a livelihood. Once again, this supports a finding that MCOVA was in the business of selling alcohol.

(c) Nichols contends that a reasonable insured in MCOVA's position would not have understood that MCOVA was considered to be a business enterprise for purposes of the insurance policy. However, the policy, titled a "Commercial Insurance Coverage Policy," explicitly refers to its insured as a business entity. For example, Section II of the policy, which defines who is insured thereunder, bases its definitions on the assumption that an insured is operating a business of some kind. It follows that a reasonable insured would not purchase a policy which insures against loss and liability resulting from business activities unless it was indeed engaged in such activities. Thus, a reasonable insured in MCOVA's position would understand that it was considered a business enterprise for purposes of the policy.

3. We note that other jurisdictions are split on the issues discussed herein. Some states have held that a business dramshop exclusion should not be applicable to nonprofit entities. See, e.g., *Laconia Rod &c. Club v. Hartford Accident &c. Co.*, 459 A2d 249 (N.H. 1983); *American Legion Post No. 49 v. Jefferson Ins. Co. &c.*, 485 A2d 293 (N.H. 1984); and *Newell-Blais Post No. 443 &c. v. Shelby Mut. Ins. Co.*, 487 NE2d 1371 (Mass. 1986). Others have rejected such a narrow focus on the status of an entity and have considered the nature of the entity's activities. See, e.g., *Sprangers v. Greatway*

*Ins. Co.*, 514 NW2d 1 (Wis. 1994); *McGriff v. U. S. Fire Ins. Co.*, 436 NW2d 859 (S.D. 1989); *Cormier v. Travelers Ins. Co.*, 618 S2d 1185 (La. App. 1993). For the reasons outlined above, the trial court did not err in granting summary judgment.

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 12, 1998.

*Nimmons & Malchow, Kenneth M. Nimmons, Mark S. Watson, Ross, Wallace & Hammond, John C. Hammond*, for appellant.

*Goodman, McGuffey, Aust & Lindsey, Michael A. Dalton, Leslie S. Sullivan*, for appellee.